The plaintiff was injured on September 16, 1941, while sawing logs for the defendant company. A tree fell across the lower part of his back, on the right side, pinning him to the ground and breaking his left leg at the upper part of the middle third. He alleges in his petition and has submitted proof in an effort to show that the injury from the falling tree on his back injured and dislodged his right kidney, causing the passage of blood in his urine. The defendant admits that plaintiff sustained a fracture of his left femur while in its employ cutting logs, and that it had him treated for this injury and paid him compensation up to March 18, 1942, but defendant claims that the fracture of plaintiff's leg has fully healed and that he suffers no further disability from that injury since the compensation payments were discontinued. It denies that plaintiff suffered any injury to his kidneys, and avers that, if he is now suffering from a disability on account of the condition of his kidneys, such disability did not result from the accident which he sustained.
The trial court rendered judgment in favor of plaintiff and against the defendant for total and permanent disability for 400 weeks at the rate of $7.80 per week, or a total of $3,120, with legal interest on the weekly payments from their maturity, less a credit of $171.60, previously paid; also awarded medical fees for the three doctors who testified for plaintiff in the case. Defendant has appealed.
The sole question on this appeal is the nature and extent of the injury which plaintiff received in the accident and whether or not his present condition is disabling and is a result of the accident. As the proof clearly shows that plaintiff has not been able since the accident to perform the kind of work he was doing before he was injured, the question is narrowed down to the principal defense which is that whatever disability the plaintiff now suffers results from a kidney trouble known as hydro-nephrosis which has no causal connection with the injury.
Dr. Clovis Toler examined and took x-rays of plaintiff in May, 1942, and the substance of his finding is that the plaintiff has a slight limp in his left leg from the overlapping of the bones in the healed fracture; the left leg being about 3/4 of an inch shorter than the right leg; a spicule, or bony spur projecting from the inner aspect of the fracture; tenderness in the spine over the kidney region with a drop of some three inches of the right kidney, and considerable red blood cells in the urine, indicating hemorrhage from the kidneys. The doctor gave as his opinion that the spicule bone protruding into the flesh of the left leg would cause some pain on strenuous exercise, or use of the leg, the spicule over the healed fracture being a permanent condition. He expressed the opinion that the bony spicule projecting from the healed fracture taken in connection with the discomfort caused by the overlapping of the bones and the shortening of the leg would cause a disability of about one-third in the use of the leg in hard manual labor. But he thinks the condition of the kidney is more serious and more disabling; that the kidney condition renders plaintiff totally and permanently disabled from doing hard manual labor. From the history of the case, he was of the opinion that the blow on plaintiff's back from the falling tree caused the dropping of the right kidney from its normal position and caused the hemorrhage. He says that 80 to 85 per cent of such conditions result from trauma.
Dr. E.M. Toler confirmed in general the findings and opinion of Dr. Clovis Toler as to plaintiff's condition and the cause of it. In explanation of the fact that the blood in the urine was not discovered *Page 474 
until some six weeks after the accident, these two doctors, while admitting that a hemorrhage from the kidneys caused from trauma will usually show up in a few days, state that the discharge of blood in the urine could have been going on for some time before plaintiff discovered it, as he was in a cast and in bed during this time and did not notice the blood in his urine. In this connection it is proper to state that plaintiff testified that he had never passed blood in his urine prior to the accident.
Dr. McHugh did not examine plaintiff but did examine the x-rays made by Dr. Toler and was given a history of the case. He was of the opinion that the condition of plaintiff's leg would impair its use to some extent and affect his capacity to work, but, like the other doctors, he thought the kidney trouble the most serious and disabling. On being given the history of the kidney hemorrhage and the fact that it was discovered some six weeks after the accident, he expressed the opinion that the accident had something to do with this trouble; that if the person was healthy and had done hard work up to the time of the accident and then had these findings show up after the injury, it would be impossible to disconnect the two and say that the injury had nothing to do with the condition.
On the day of the accident, plaintiff was taken to a hospital in Magnolia, Mississippi, where he was treated by Dr. Beacham for six or eight weeks. He was examined and x-rays were made of him at the hospital, and his urine was examined six days after he was placed in the hospital, Dr. Beacham testifying that at the time there was no blood found in the urine. Plaintiff was put in a traction for some six weeks, and then a cast was put on him and he was sent home. Shortly after he got home, he discovered the blood in his urine, and the local physician for the insurance company was called, and after finding the blood in the urine, gave plaintiff some medicine and shortly thereafter sent him back to the hospital for treatment. Dr. Beacham used a cystoscope and found that blood was coming from plaintiff's right kidney, but both kidneys were affected with what is called hydro-nephrosis, or excessive water in the pelves, the pressure of which on the walls of the kidneys sometimes causes the bursting of the blood vessels, resulting in a hemorrhage. Dr. Beacham expressed the opinion that the hemorrhage from the kidney did not result from the fracture of the leg, but that it was his opinion that the hydro-nephrosis was caused by the dropping of the kidneys, with a consequent angulation and obstruction to the passage of the urine. It was his opinion, as well as that of Dr. Scarles, the local physician for the insurance company, that plaintiff had no further disability from the fracture of the leg after March, 1942, and that the kidney trouble had no connection with the accident.
No doubt the fracture of plaintiff's left leg had sufficiently healed at the time his compensation was discontinued to permit him to perform some kind of work, but the preponderance of the medical opinion is to the effect that he would experience some pain and discomfort in doing hard manual labor, such as sawing logs. The spicule of bone projecting from the fracture into the fleshy tissue of the leg is calculated to cause some pain on strenuous exertion of the leg, and the unbalanced weight-bearing from the pelvis on the legs resulting from the shortness of the left leg would cause considerable discomfort and greater exhaustion, if not actual pain, in doing hard manual labor.
However, even though it be conceded, as claimed by defendant's two doctors, that there is no disability resulting from the fracture after the compensation payments were discontinued, we are of the opinion that the evidence supports the conclusions of plaintiff's three doctors that the hemorrhage from his right kidney resulted from the blow which he received over that kidney when the tree fell on his back. It is satisfactorily explained why the hemorrhage did not show up, or at least was not discovered, until some six weeks after the accident. A blow on the back, such as would result from a tree falling across it, could well cause serious injury to the tissues and ligaments which hold the kidneys in place, causing them to drop and produce the rupture of a blood vessel.
It is true that a compensation claimant must connect his disability with the accident by legal proof and with reasonable certainty, but he is not required to produce such iron-clad proof as would exclude entirely any other theory or hypothesis as to the cause of the disability. When we consider the nature of the blow that he received over his kidney, and the fact that nothing was wrong with him before the accident; *Page 475 
that blood was passed in his urine a few weeks after the accident and had not been passed previous to the accident; that he has pain in his back, and, according to the medical testimony, this kidney condition frequently results from trauma, we think the plaintiff has met the legal requirement of proving with reasonable certainty that his present kidney trouble resulted from the accident.
The trial judge rendered judgment for a lump sum of $3,120 to cover compensation for the full 400 weeks, payable weekly from the date of the accident, less a credit for the compensation already paid. The compensation law limits compensation for total and permanent disability to a period not exceeding 400 weeks. The judgment will be revised so as to conform to the law in this respect.
For the reasons assigned, it is ordered that the judgment appealed from be revised and corrected so as to award plaintiff compensation in the amount stated in the judgment for a period not exceeding 400 weeks, and payable as stated in the judgment; and in all other respects, the said judgment is hereby affirmed at the cost of defendant in both courts.