Plaintiff was injured on October 25, 1945, while performing the duties of his employment with the defendant when a large suspended reel of paper, he was guiding from one part of the plant to another, broke loose from its attachments, fell to the floor, and in doing so struck him a glancing, although heavy blow on the right side of his body, felling him to the floor. The main force of the blow was to the right hip and adjacent area. The reel of paper weighed in excess of five thousand pounds. He was immediately picked up and hastily carried to a sanitarium in the City of Monroe, Louisiana, only a few miles distant, and was there examined and ministered unto by Dr. J.Q. Graves, defendant's regularly employed physician. The following day plaintiff was removed to the home of his mother, who lives near defendant's mill.
When Dr. Graves examined plaintiff at the sanitarium he was complaining of intense pain over the right crest of the right ilium, right chest and right leg. He found as objective symptoms of injury an abrasion six or eight inches long above and to the rear of the left hip and a knot about the size of an egg above the hip and near the right groin. Dr. Graves had X-rays made to ascertain if there were any fractures of the hip, chest or spine. He diagnosed the case in the following language, to-wit:
"He had a traumatic wound of the soft parts over the crest of the right ilium and pain in the right chest, anteriorally, and pain in his right leg."
Plaintiff's total disability to work was recognized by defendant and its insurer and payments of compensation to him were immediately made, and continued for nine weeks.
After plaintiff was removed from the sanitarium he continued under observation of Dr. Graves and after leaving the bed he visited the doctor's office every two weeks. On January 4th, he was pronounced by Dr. Graves as being able to resume work and compensation payments were then discontinued. This suit followed.
Plaintiff sued to recover compensation at the rate of $19.50 per week (being 65% of his weekly wage) for four hundred weeks, on the theory that he is permanently totally disabled to do work of any reasonable character as a result of the accident. *Page 918 
The only issue tendered by defendant's answer relates to the question of disability. Defendant says that payments of compensation were discontinued because plaintiff had recovered from his injuries under treatment of its physician, as of January 2nd, and thereafter he was fully able to work as he formerly had done. The lower court agreed with defendant's position and dismissed the suit. Plaintiff prosecutes appeal to this court.
It cannot well be disputed that the heavy reel of paper dealt plaintiff a terrific blow, although it was not a direct one. As best we can tell from the testimony the reel fell violently against his body and landed at his feet, dragging against the right leg as it descended. It was a remarkable escape from death or from much greater bodily injury than was sustained.
After plaintiff employed counsel, he was sent by him to Dr. C.H. Mosley of Monroe, Louisiana, to be X-rayed to determine the nature and extent of his injuries. These pictures, according to Dr. Mosley's interpretation of them, disclose considerable injury to the structure about the fourth and fifth vertebrae, to the facet and to the lamina between the third and fourth vertebrae. He also found from these pictures that the transverse process of the second lumbar vertebra was torn loose at his base. Physical examination of the patient by Dr. Mosley disclosed some rigidity and listing of the spine; that the patient leaned over to one side. It was the opinion of Dr. Mosley that these injuries resulted from the accident that befell plaintiff; that from them the pain of which he complains could emanate; and that such injuries produced total disability to do hard work.
Dr. H.V. Collins, a general practitioner, examined plaintiff physically twice. He found symptoms sufficiently pronounced to justify the complaint of pain in the chest, hip and right leg. Dr. Collins was of the opinion that plaintiff was totally disabled to do hard work and did not think he would ever fully recover from the disability.
Dr. D.M. Moore, Roentgenologist of the St. Francis Sanitarium, who has had many years of experience in making and reading X-ray pictures, made pictures of plaintiff on the day of his injury. Dr. Moore is certain the X-rays made by him negative the existence of any fracture or other injury to any of the bones of his body.
Dr. W.L. Smith, who specializes in X-ray diagnosis and treatment, made X-rays of plaintiff in January, 1946. These pictures, according to his opinion, do not disclose any bone injury. He also examined the pictures made by Dr. Mosley and did not find therein the bone injuries as were found by Dr. Mosley.
Dr. A. Scott Hamilton, who specializes in orthopedic surgery, and who has had broad experience in this field, examined plaintiff clinically on March 5, 1946. He also viewed X-rays made by Dr. Smith and agreed with Dr. Smith in his interpretation thereof. To no extent did Dr. Hamilton agree with Dr. Mosley touching the presence of injury to the bones covered by Dr. Mosley's testimony.
[1] The medical testimony unquestionably preponderates in favor of the contention that none of the bones in plaintiff's body was fractured or seriously injured from the reel of paper falling against him; and if a decision of the issue in the case depended solely upon this sort of testimony, perforce the judgment appealed from would have to be affirmed. But, we are of the opinion that the medical testimony concerning bone injury may be entirely cast aside and yet there remains ample lay testimony in the record to warrant an award in plaintiff's favor.
Plaintiff is twenty-three years of age. He was born and reared in the country and has followed farming and public work for a livelihood since reaching manhood. He worked regularly and had worked in defendant's mill three years prior to being injured. Prior to the accident he was healthy, physically strong, energetic and robust. He is married and has one small child. On account of his disability to earn a living for his wife and child he was forced to sell their home and to take up abode with his wife's stepfather. At the time of trial, five months after the accident, he and family were living with and were wholly dependent upon his wife's parents for subsistence. He was confined to bed *Page 919 
for about one week after leaving the sanitarium and was forced to use crutches for some time after leaving the bed. He testified that his back, hip and leg constantly gave him pain and that it increases in intensity when he undertakes to do work of any kind; that his strength has to a large extent been sapped. One of his neighbors testified that he had heard plaintiff make outcries when he stooped over to pick up any object.
Plaintiff's stepfather-in-law associates with him daily. He is in a position to observe his physical actions and movements at all times and knows he has not been able to work since injury.
Plaintiff's wife testified that he is restless at nights; that his strength is so limited that he cannot even carry his child in his arms, and always fails when he tries to do any work that requires much physical effort. Several of plaintiff's friends and neighbors testified to his ability to do heavy work prior to the accident and that he regularly engaged in such work for a living. They felt sure that he is not now able to do the work he formerly did.
The lay testimony in the case, to our minds, proves that plaintiff is not able to work. If he is not able to work the disability is without doubt due to the accident. If he is not disabled to work, then we would have to conclude that a well designed conspiracy has been confected by some of his friends, his wife, her stepfather, and himself to mulct defendant and its insurer of an indefinite amount of money. We are not willing to convict them of such a charge.
[2] It has been held several times by this court and other appellate courts of this state that to entitle an injured workman to compensation he need not prove specifically what bones, organs, etc., were injured, to produce the disability. It is sufficient if he does prove that the effect of the accident is to produce the disability. Obviously, this is a fair, just and reasonable rule to follow in compensation cases. It finds application in this case. Plaintiff is disabled. The blow from the reel of paper was of such force that one would expect very serious and perhaps long time ill effects therefrom. Very little outward signs of the blow were visible, yet we know it must have greatly jarred and disturbed plaintiff's entire body, especially the region about the right hip joint. It would have been quite surprising if disability for a long period had not resulted.
It does not comport with reason to think that plaintiff a young, energetic, robust man with wife and child dependent upon him for support, would be willing, in this day of high wages and easy money, to be satisfied with an income of $19.50 per week if he could avoid doing so. His good record for continuous hard work argues strongly against such an idea.
It is our opinion, however, that plaintiff's disability, although total, is not permanent.
We greatly regret to differ with our brother of the lower court on purely a question of fact, but are impelled to do so after a most careful and diligent study of the record in this case.
For the reasons herein assigned, the judgment appealed from is annulled, avoided and reversed and the law and the evidence being in favor thereof, there is now judgment in favor of plaintiff, J.C. Christy, and against defendant, The Brown Paper Mill Company, Incorporated, awarding plaintiff compensation at the rate of Nineteen and 50/100 ($19.50) Dollars per week, during total disability, not exceeding three hundred (300) weeks, beginning October 25, 1945, together with five per cent (5%) per annum interest on each installment from the date due until paid, less credit for nine (9) weeks compensation heretofore paid; and for all costs of this suit. *Page 920