This is a suit for compensation for total and permanent disability growing out of an alleged accidental injury received by the plaintiff on June 28, 1944, while in the course and scope of his employment by the Aluminum Ore Company. Plaintiff made the Maryland Casualty Company, the insurer of his employer, defendant in the suit. From a judgment dismissing his suit, plaintiff has appealed.
The evidence shows that plaintiff's employment with the Ore Company began some time in April, 1943, as labor foreman supervising a large number of men; in order to perform his duties, it was necessary for him to get about the plant, which was extensive, climb up and down ladders or stairs, get in, drive and get out of automobiles, jump ditches and show or instruct the men how to perform the work. His duties also required him to perform arduous or hard manual labor at times.
Prior to June 28, 1944, plaintiff had under his supervision some three hundred men. On that date, the plant had closed down, and the personnel under plaintiff's supervision had been reduced to about forty men. On the date mentioned, plaintiff, while descending a flight of stairs some 25 or 30 feet long, slipped on grease or oil on the second step from the top and slid all the way down the steps holding on to the railing to the concrete floor. On his descent, part of his back came in contact with the steps. When he reached the bottom, his feet were straight and he was lying in a twisted position on his right side. He was red in the face. Plaintiff, at first, did not think that he was injured, but when he tried to get up he realized that he was injured; he was helped up to his feet by Jack Scott, one of his men, who assisted him by holding his arm and took him to the office of Mr. Alfred P. Giroir and sat him down in a chair. Mr. Giroir noticed plaintiff's abnormal appearance and, after plaintiff's complaint of having hurt his back coming down the stairs, he, Giroir, told plaintiff to go to the first aid station. Plaintiff at that time was complaining of pain in the pit between his two shoulders.
The plaintiff, on the first visit to the first aid station, complained of pain between his two shoulders and the nurse in charge gave him diathermy treatment on the affected area. The next day, she bandaged the back. Neither he nor the nurse thought much of the injury at that time, he, plaintiff, then believing that he was suffering from a torn or strained ligament. But because of the pain continuing in plaintiff's back between the shoulder blades, plaintiff received infrared light treatments and the strapping of his back several times at the first aid station between the date of the accident and September 1, 1944.
The evidence is conclusive that plaintiff, from the date of his fall to his termination on September 1, 1944, when the plant was finally closed, continued to suffer pain between his shoulder blades. The evidence is also conclusive that after the injury plaintiff was not able to walk around like he had before and was furnished with a truck and a driver to visit the several parts of the plant until his final termination. It is also conclusive that the injury had incapacitated him to perform hard manual labor. On account of the plant's pending closure within a few weeks or months plaintiff remained on the job, performing such duties as he could while in pain. *Page 502 
At the end of his employment, plaintiff returned to his home in the country in the Parish of St. Landry, still suffering with pains between his shoulders. During his absence from home, the front of his home had become weedy. A day or two after returning to his home, he attempted to mow his lawn, and while so doing, he immediately felt a severe aggravation of the pains in his back at the same place where it had been ever since his fall. Some three or four days thereafter he consulted his family physician, who applied light treatment and tried to bandage his back. Not receiving any benefits from the treatment, his family physician then sent him, in the first part of October, 1944, to the Ochsner Clinic in New Orleans, and he was there placed in the medical care of Dr. Guy A. Caldwell. After several subsequent visits to the Clinic, Dr. Caldwell diagnosed plaintiff's condition as a complete collapse of the body of the sixth dorsal vertebra due to its destruction by a giant cell tumor. On June 4, 1945, Dr. Caldwell performed a serious and dangerous operation of a bone fusion of plaintiff's spine. Plaintiff made good progress and was dismissed the latter part of June, 1945, with instructions to wear a brace and to remain in bed, on a hard mattress, the greater part of the time at first, and gradually to sit up with the brace, but not to engage in any standing work for several months. According to Dr. Caldwell, plaintiff, at the time of his discharge, was totally disabled to perform hard manual labor and he would not venture to say how long he would so remain. On the date of trial, Feb. 5, 1946, plaintiff was still wearing the brace, obviously indicating that he was not able then to do the kind of work which he was doing at the time of his falling down the stairs.
Although in defendant's answer the alleged accident of June 28, 1944, was denied, it is now conceded that plaintiff did fall down the flight of steps on that day. The defendant now contends that the accident merely caused a slight injury or strain which did not prevent him from working for a single day and that his present condition is not due to the said light injury or strain he then received, but is caused by the complete collapse of the vertebra by the giant cell tumor, there being no causal connection between the fall and the collapse of the vertebra. Therefore, there are two questions presented to us, viz.: first, whether or not the plaintiff was disabled by the accident, and, second, whether or not the injury aggravated, activated or accelerated a pre-existing tumor of the vertebra, or whether or not if the accident did not produce the result stated, then the tumor reduce plaintiff's recovery from the injury.
In determining and in reaching a conclusion in this case, being a compensation case, it is important that much consideration should be given to the character of the claimant. We say this because it is often contended by the defendant that the claimant is a malingerer and is faking his injury, pain and claim. However, in this case, there isn't any suggestion or intimation of plaintiff being a malingerer or faking his injuries.
In this case we find, from the testimony, that plaintiff, prior to June 29, 1944, was a strong, healthy man, forty-two years of age, had been a farmer all his life, had never had any trouble with his back. He is shown to be a man of good character, and it does not appear that he is in any manner trying to impose on the Court. He candidly told what happened to him at the time he sustained the injury on June 28, 1944, and without exaggeration or pretence related how he continued to work at his job at the aluminum plant, regardless of his suffering quite a bit, but hoping all the time that his injury was not serious and that he would get over it in due course of time. He is corroborated in the manner of his fall, his pains, his inability perform his former duties and the treatments he received at the first aid station during the period from June 28, 1944, to his termination on Sept. 1, 1944, by two of his coemployees and Mrs. Norma Sharp, the nurse at the first aid station up to August, 1944, the date of her termination.
[1] The question now arises as to whether or not the fall could have caused plaintiff any continuing disability from, June 28, 1944, to September 1, 1944. That question is answered in the affirmative by Dr. Guy Caldwell, the only doctor to testify *Page 503 
in the case, viz.: "The slipping and fall as has been described would be calculated to produce strain and wrenching in the region of the dorsal spine, because of the patient grasping the hand rail and holding as his weight slid down the steps." As to the duration of such a strain or wrenching in the region of the dorsal spine the doctor states: "If it amounted to not more than strain or chronic strain, they usually recover in three to six months from such symptoms, although they are chronic enough to have some recurring attacks with over-use, over a period of several years." Thus, we see that by the plaintiff continuing his employment, the doctor's testimony fully justifies the conclusion that plaintiff did receive, on June 28, 1944, an injury which disabled him to do the substantial duties for which he had been employed despite the fact that he did carry on by his fortitude until he was terminated. As to the contention of the defendant that the accident merely caused a slight injury or strain which did not prevent him from working for a single day, which contention seems to have been accepted by the trial judge, we find no merit therein. Defendant and the lower court lose sight of the fact that plaintiff did such work as he could under pain. His working under such condition should not mitigate against him. To the contrary, it shows a desire on his part not to take advantage of the compensation law and he should be commended therefor rather than censured. It is now too well settled in our jurisprudence to even cite authorities that if a claimant can substantially do his duties only with pain and discomfort, he is entitled to compensation for his disability. In our case, the evidence preponderates to the effect that plaintiff, within the purview of the compensation statute, was disabled from performing his former duties up to the collapse of the vertebra on September 7, 1944.
We now pass to the question whether or not the injury received by the plaintiff on June 28, 1944, aggravated, activated or accelerated a pre-existing tumor of the vertebra or had some connection with the collapse of the vertebra.
As previously stated, Dr. Caldwell was the only doctor to testify in this case. We should consider the whole of Dr. Caldwell's testimony in the light of the facts stated heretofore and when we do, and we probe his opinion as deeply as we can, we would say that Dr. Caldwell was certain of only one thing and that was that the accident had not caused the tumor, nor did it cause, at that time, the complete collapse of the vertebra. Dr. Caldwell wanted to be fair to the defendant in the case by stating that there was no sound reason from a medical standpoint why he could definitely state that the accident may have aggravated a condition of an injured vertebra. Nevertheless, he wanted to be fair to the plaintiff, also, and would not say that the accident had not activated or aggravated an already existing condition. He would not say that this giant cell tumor which he found to exist at the time of his examination on October 10, 1944, had already started to show itself as a tumor on June 28, 1944, since he says that the rate of growth cannot be known. He does say, however, that on account of the size of the tumor, it would suggest that it had been present for a period of several months. He nevertheless states repeatedly in his testimony that there might have been something there which the accident helped to bring into play and aggravate. If any such condition existed before June 28, 1944, it certainly was not apparent to plaintiff nor to any one else, in that plaintiff apparently was in good health before the accident and never experienced any trouble whatsoever in that region of his back. He had had two recent automobile accidents which produced no injury to that part of his body and, in fact, it is not suggested by the defendant that the accidents may have caused his sufferings after June 28, 1944.
[2] It is true that Dr. Caldwell was put on the stand as plaintiff's witness and plaintiff is bound by any statements he may have made whether they expressed any doubt as to the real cause of plaintiff's injury or not. It is on these statements defendant so strongly relies and upon which the trial judge based his judgment. Yet taking the doctor's testimony as a whole there remains several answers given by the doctor to direct questions by counsel for plaintiff which, in our opinion, reflect the *Page 504 
stronger opinion, in view of the symptoms complained of by the plaintiff from the date of the accident to the time the doctor saw him, that there was a causal connection between the accident of June 28, 1944, and the condition the doctor found which admittedly is a disabling one. We refer particularly to those answers given by him in his deposition without quoting them extensively. After expressing an opinion that either one or two things may have happened, he is asked the question "In either case, there would be a definite relationship to a greater or less extent, between the fall and the tumor?" to which he answers: "Yes, if there were continuing symptoms from the time of the fall through the time of the severe symptoms which indicated the actual collapse of the vertebra, you would have to think of the two as being related." Aside from that opinion expressed from a medical viewpoint, to us laymen this is the most reasonable hypothesis and, in the absence of any other hypothesis on which to base the real and actual cause of plaintiff's condition, we say it is sufficient evidence to support plaintiff's claim.
In the case of Lowery v. W. Horace Williams Co. et al.,8 So.2d 704, 705, we stated: "If there is found to be an accidental back injury which brought on the disability, the fact that the injured employee cannot have the doctors agree on its exact cause cannot deprive him of the compensation which is otherwise due him under the compensation statute, Act 20 of 1914 and its amendments."
In the case of Crier v. Kent Piling Co., 12 So.2d 472, 474, we stated: "It is true that a compensation claimant must connect his disability with the accident by legal proof and with reasonable certainty, but he is not required to produce such ironclad proof as would exclude entirely any other theory or hypothesis as to the cause of the disability."
The following cases are to the same effect: Anderson v. Louisiana Oil Refining Co., 16 La. App. 294, 134 So. 343; IIennen v. Louisiana Highway Commission, La. App., 178 So. 654; Christy v. Brown Paper Mill Co., Inc., La. App., 27 So.2d 917.
In this court, defendant cites and relies upon the cases of Rhodes v. American Insurance Co., La. App., 27 So.2d 388, and Barnes v. Dixie Drilling Co., La. App., 31 So.2d 292. Without discussing these cases, the mere reading of these cases clearly shows that they are inapposite to the case at bar. To the contrary, regardless of what the defendant says in its brief, we find the cases cited by us to be applicable to this case and are in point.
[3] Our conclusion therefore is that the plaintiff's disability is caused by the accident which he sustained on June 28, 1944; if not the original cause of his condition then that there is a causal connection between the said accident and the collapse of the vertebra, in either event, plaintiff is entitled to recover compensation at the rate of $20 per week, not exceeding 400 weeks.
[4] Plaintiff was paid wages in excess of the weekly compensation due him from June 28, 1944, to September 1, 1944. Defendant is entitled to a credit of the number of weeks between that period, that is, nine weeks.
[5] The evidence shows that plaintiff has incurred medical expenses far in excess of the maximum amount allowed under the compensation act and he is therefore entitled to recover such maximum amount, that is, $500.
For these reasons, it is ordered that the judgment appealed from is hereby annulled, reversed and set aside.
It is now ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff, Louis Earl Vautrot, and against the defendant, Maryland Casualty Company, granting compensation to plaintiff at the rate of $20 per week from September 1, 1944, for a period not exceeding 391 weeks, with 5% per annum interest thereon on each past-due installment until paid;
It is further ordered that there be judgment in favor of plaintiff against said defendant in the further sum of $500, with 5% per annum interest thereon from judicial demand until paid. All at the costs of defendant.
Reversed and rendered. *Page 505