Harry A. Dilley, plaintiff, was employed as roughneck and/or fireman by the Phillips Petroleum Company in the Erath Oil Field in the parish of Vermilion, Louisiana. Whilst in the scope of his employment on November 11, 1941 he suffered painful, serious and lasting injuries to his back, caused by the falling thereon of the lid of a tool chest weighing approximately two hundred pounds. He has instituted this suit against his employer, Phillips Petroleum Company, under the Workmen's Compensation Act of this State, Act No. 20 of 1914, as amended for total permanent disability as a result of said accident.
A great deal of medical testimony by eminent physicians and specialists was introduced by both sides. We shall now proceed to analyse the same.
At the time of the accident, plaintiff was treated by Dr. Marion Young, who at that period was defendant's Physician, and he was paid compensation at the rate of $20.00 per week for a period of eighteen weeks.
On February 21, 1942 Dr. Marion Young submitted report to Phillips Petroleum Company, defendant herein, relative to his findings in the Dilley matter, from which we quote in part as follows: "* * * Up to the present I have felt that his condition seems about stationary or little or no *Page 60 
improvement. * * *" "* * * I feel that Mr. Dilley is still disabled and there is little or no point in continuing this line of treatment. I would suggest that this man be referred to an orthopedist or bone specialist for an opinion of the case. * * *"
Acting upon the recommendation of Dr. Young, the Phillips Petroleum Company sent Mr. Dilley to Dr. Earl D. McBride, Oklahoma City, Okla. for further examination. The opinion of Dr. McBride was that the pain suffered by Dilley "was morely due to some gastric or gall bladder disturbance than to the injury to his ribs. * * *", and he referred him to Dr. Arthur W. White, also of Oklahoma City, whom we would refer to as a stomach specialist. The diagnosis reached by Dr. White was that of peptic ulcer and colonic spasm, stating that the same probably developed on a nerve basis. We find in his report the following: "* * * Tenderness appeared on pressure from the external spinal nerve root right, toward the abdomen. Finger point tenderness over the epigastrim and the second external spinal nerve root left. * * *".
Dr. McBride reported on March 11, 1942 to defendant company that plaintiff could return to work within the next two or three weeks, and continue to work as an able-bodied man, provided proper treatment was given to his stomach ailment.
Dr. Donald B. Williams examined the plaintiff at New Orleans, Louisiana, on July 8, 1942, and we quote in part from his report as follows: "* * * Diagnosis: Severe contusion of the back, spine and lower chest with persistent back pain from severe blow to lumbar spine. In my opinion the patient's symptoms and pain are genuine. The patient is suffering from a traumatic residual injury to a lumbar spinal nerve root which is causing a more or less constant pain in the lumbo-sacral region. At this examination it is my opinion that he is unable to do manual labor necessitating ordinary exertion and that considering the patient's age this disability is permanent."
Some time thereafter, plaintiff secured employment at various places, as is fully shown in the record. The lower court found that the work performed by him at these various jobs was of a light nature, and that he carried on despite constant pain to his side and back. We are in accord with that finding.
The plaintiff broke down whilst attempting to work and was taken to a hospital at Great Bend, Kansas. An exploratory operation was performed by Dr. Clark W. Zugg, and his findings were that plaintiff was suffering from a tumor of the pancreas. No biopsy was performed, and it was therefore not determined whether the tumor was malignant. The depositions of Dr. Zugg were taken on the 26th of August, 1947, from which we quote in part as follows: "* * * Of course, there is no accurate way to be sure about whether a tumor is malignant or benign without a pathological specimen. There is a possibility that this tumor mass may not have been of a malignant type, since Mr. Dilley is still alive. * * *" "* * * I don't think anyone can beabsolutely sure what was or is causing this man's pain in hisback, (Italics ours) but it is my opinion that Mr. Dilley's pain is due to the tumor, which referred pain to his back * * *".
Dr. Marlin W. Carlson, who assisted Dr. Zugg in the exploratory operation, testified that trauma is generally understood not to be a cause of malignant tumor.
The depositions of both Dr. Zugg and Dr. Carlson were taken on August 26, 1947, whilst the operation was performed on April 10, 1946. The fact that Dilley was still alive on August 26, 1947 seemed to indicate to Dr. Zugg that the tumor was benign and not malignant.
The diagnosis of the ailment of the plaintiff as peptic ulcer by Dr. Arthur W. White seems to have been exploded by the findings of Dr. Zugg when he performed the exploratory operation. His testimony shows that his diagnosis did not include gastric ulcer.
There is therefore conflict between these eminent physicians as to the diagnosis of the ailment from which the plaintiff is suffering.
The reports of Doctors Zugg and Carlson, experts for the defendant, show that plaintiff is suffering from a tumor of the *Page 61 
pancreas. Dr. Carlson states that a malignant tumor is not caused by trauma; and Dr. Zugg testified that, as plaintiff was still alive, there was a possibility of the tumor not being malignant.
On the other hand, Doctors Young and Williams, experts for plaintiff, testified positively that plaintiff is suffering from nerve root injury, causing total permanent disability. Dr. Young further testified that the symptoms of nerve root injury and pancreatic injury, in many cases, are rather parallel. He was very positive in his testimony that a pancreatic tumor could be caused by trauma, and stated he had refreshed his memory by reference to medical textbooks relating to this subject, and that this opinion of his was supported by eminent doctors in textbooks on surgery.
The lower court, in a lengthy, well-reasoned written opinion leaned heavily upon the testimony of Doctors Young and Williams.
[1, 2] We feel that Dilley is totally and permanently disabled. This issue was passed upon by this Court in the case of Lowery v. W. Horace Williams Co. et al., La. App.,8 So.2d 704, 705, when we stated: "If there is found to be an accidental back injury which brought on the disability, the fact that the injured employee cannot have the doctors agree on its exact cause cannot deprive him of the compensation which is otherwise due him under the compensation statute, Act 20 of 1914 and its amendments."
Counsel for defendant, in a very forceful brief, points out that, in workmen's compensation cases, the law places the onus probandi on the plaintiff just as it does in other civil controversies, and cites numerous authorities in support thereof.
[3] A very close study of the entire record convinces us that the authorities submitted by him are not applicable to the case at issue. We find that the case of Crier v. Kent Piling Co., Inc., also by this Court, 12 So.2d 472 is controlling: "Compensation claimant must connect disability with accident by legal proof and with reasonable certainty, but need not produce such proof as would exclude entirely any other theory or hypothesis as to cause of disability." This case was cited approvingly by us in Vautrot v. Maryland Casualty Co., La. App., 32 So.2d 500, 503. The following cases are to the same effect: Anderson v. Louisiana Oil Refining Co., 16 La. App. 294, 134 So. 343; Hennen v. Louisiana Highway Commission, La. App., 178 So. 654; Christy v. Brown Paper Mill Co., Inc., La. App., 27 So.2d 917.
In its decision, the lower Court had this to say about Dilley: "He made a good witness and the Court was impressed to the extent that the Court believes he told the truth."
The lower Court granted judgment against defendant for medical expenses in the sum of $250.00. In this it was in error. In the transcript we find the following stipulation entered into by and between counsel for plaintiff and defendant: "It is admitted by and between Counsel that Defendants paid the medical fees and expenses enumerated in their answer, which shall be an off-set against any medical expenses awarded Mr. Dilley in the event of his success in this matter." The award of medical expenses is therefore disallowed.
We find it necessary, therefore, to amend and recast the judgment, and, for the reasons stated, it is recast so as to read as follows: It Is Therefore Ordered, Adjudged and Decreed that the judgment in so far as it awards the plaintiff compensation at the rate of Twenty ($20.00) Dollars per week for a period not exceeding four hundred (400) weeks, beginning the 11th day of November A.D., 1941 until paid, together with five (5%) per cent per-annum interest on each and every installment aforesaid from its respective maturity, subject, however, to credit of Twenty ($20.00) Dollars per week for eighteen (18) weeks already paid thereon, and the payment of expert fee of Dr. Marion Young as witness in this case be fixed at Twenty-five ($25.00) Dollars to be taxed as costs, is maintained; that the award for medical expenses in the sum of Two hundred fifty ($250.00) Dollars is disallowed; and that, as thus amended to be affirmed at the cost of appellant.
ELLIS, J., absent. *Page 62