FRUGE, Judge ad hoc.
Alleging total permanent disability as a result of an accident injury to his ear on October 24, 1946, while in the course of his employment, plaintiff, Charles H. Hebert, instituted this suit against defendant, Fifteen Oil Co., claiming compensation at the rate of Twenty and No/100 ($20.00) Dollars per week for a period of four hundred weeks.
Defendant admitted that while in the course of plaintiff’s employment he, plaintiff, received a slight accidental injury to his ear on the date alleged and that said employment was hazardous under the terms of the Louisiana Workmen’s Compensation Act. Act 20 of 1914, as amended. However, defendant denied that there is any connection between the slight injury sustained by the plaintiff on the 24th day of October, 1946, and the admittedly total permanent disability from which plaintiff is and was suffering at the time of the filing of his suit in October, 1947. Further answering, the defendant alleged that plaintiff continued in the employ of defendant for a period of 33 weeks after the date of the accidental injury at a rate of pay greatly in excess of the maximum weekly payments allowable under the Workmen’s Compensation Law of the State of Louisiana, and that defendant has expended the sum of $23.01 for medical expenses in connection with the accidental injury sustained by plaintiff on October 24, 1946, which is admitted by plaintiff.
The lower court rendered judgment for plaintiff as prayed for, subject to a credit in favor of defendant of thirty three weeks at twenty dollars per week, and the $23.01 expended by the defendant for medical care of plaintiff. From said judgment the defendant appealed to this court.
The sole question before the Court is whether or not the accidental injury suffered by plaintiff on October 24, 1946, during the course of his employment is the cause of his present disability, or aggravation of a dormant pathology which has precipitated or resulted in his present disability.
Plaintiff testified that he was injured on October 24, 1946, at approximately nine o’clock in the morning while rolling casing in the Charenton Oil Field and while acting within the scope of his employment as a roustabout for the defendant; that while thus employed a small twig or limb from a tree or bush penetrated his right *330 ear causing severe pain and some bleeding all of which is admitted by defendant.
The evidence disclosed that he was given first aid by Dr. Rushing and returned to work, and about eight or ten days later called on Dr. LeBourgeois in New Iberia, who treated him about twice a week for five or six weeks and then discharged him. about two weeks after his discharge by Dr. LeBourgeois, he again called on that doctor and complained about his vision and Dr. LeBourgeois prescribed glasses for him which contained very thick lenses.
Shortly thereafter, a Dr. Alexander of New Orleans, recommended that he have his tonsils removed, said operation being performed by Dr. LeBourgeois. After this operation the plaintiff still complained of intense pain and the impairment of hearing and sight.
Sometime later, upon the advice of Dr. Edward Landry of New Iberia, plaintiff went to Ochsner Clinic in New Orleans, from whence he was sent to Foundation Hospital where Dr. Dean Echols performed an operation on the base of plaintiff’s brain. After leaving the hospital he remained in New Orleans for approximately three weeks receiving X-ray treatments.
The record in this case contains the report of Dr. Echols who performed an exploratory operation on the base of plaintiff’s brain on July 22, 1947, the report of Dr. Howard Karr, and the testimony of Dr. C. M. Horton.
Dr. Echols believed that a tumor was the seat of plaintiff’s troubles and he expressed the opinion that plaintiff would soon die when he wrote his report on January 28, 1948. He stated in his report:
“At operation on July 22, 1947, I explored the cerebellar portion of the brain. I did not actually see or remove a tumor of the cerebellum, but I was able to conclude that in all probability the patient was dying of a tumor of the brain stem.
% ‡ # # %
“While I feel quite certain that the injury to the ear mentioned above could have no connection with the patient’s present illness, only an autopsy could settle this matter to everyone’s satisfaction.”
After seeing Dr. Echols and having the operation performed, the plaintiff returned home and his condition became progressively worse.
On June 28, 1948, plaintiff was examined in the City of New Orleans by Dr. Howard Karr. Dr. Karr submitted a report which was introduced in the case by the defendant. Dr. Karr’s report is a very lengthy one stating most emphatically that the plaintiff is not suffering from a tumor. He states: “The X-ray pictures of the brain which were taken on July 22 may have revealed dilatation of the lateral ventricles; however, the statement that the dilatation was due to an obstructive lesion in the region of the cerebellum is not warranted and is purely an inferential statement with respect to the dilatation. * * * The conclusion that a brain tumor exists is purely an inferential one and is not justified by the subsequent clinical course of this patient. Furthermore, in view of the present clinical findings the diagnosis of tumor cannot be justified under any circumstances. Even so had a tumor been present, this tumor could not exist on the basis of the type of trauma this man is alleged to have received.”
Dr. Karr diagnosed plaintiff’s illness as multiple sclerosis and stated: “This man’s present condition is due to the natural course and progression of a chronic central nervous system disease which is characterized by a chronic and progressive course with numerous remissions and exacerba-tions.”
Further he stated: “The initiation of the disease as well as its progress bears no relationship whatsoever to trauma and occurs spontaneously with reference to trauma.”
Plaintiff testified that Dr. Karr’s examination of his person consumed only about ten minutes, but Dr. Karr submitted a report, part of which is quoted above which consisted of three and one-half typewritten pages.
Dr. C. M. Horton of Franklin, Louisiana, is the only doctor who testified at the trial of this matter. Dr. C. M. Horton testified that he had known the plaintiff for approximately thirty years and had never known him to need medical attention until *331 after the accident which occurred on October 24, 1946. He testified that the disease known as multiple sclerosis was relatively speaking a rare disease and that little was known about its causes. From medical books, he stated that the probable causes were listed as trauma, injury or fatigue, exposure, intoxications and inflammatory processes. He further opinioned that a toxic condition as a result of a trauma or injury could have some effect in causing the disease or aggravating the disease. He further stated that the disease known as multiple sclerosis usually occurs between the ages of 20 and 40 and that it was possible that a man could-be suffering from multiple sclerosis and a toxic condition after forty could aggravate the disease. Dr. Horton did testify that he was not a specialist in nervous diseases and that the causes of the disease were not too well understood, but the effects on the nervous system were clearly demonstrated.
Considering the above medical reports and medical testimony this Court finds itself with conflicting medical evidence. The lower court concluded that plaintiff was suffering from the disease known as multiple sclerosis which is a disease'which attacks a portion of the brain or central portion of the nervous system. Sclerosis is defined in Gould’s Pocket Pronouncing Medical Dictionary, Tenth Edition Revised as “induration and overgrowth of the connective tissue of an organ”.
As stated before there is no denying that plaintiff is totally unable to. do any work of a reasonable character, and the only question is whether the disease plaintiff is suffering of was latent, or dormant and has been aggravated and rendered active by the accident, or if it originated on account of the infection resulting from the ear injury, or the resulting weakened physical condition of the plaintiff, which if the case would allow plaintiff to recover. See Robichaux v. Realty Operators, Inc., 195 La. 70, 196 So. 23.
Finding itself with medical evidence which is confusing and lacking, this court is compelled to reach a decision which will do equity to the parties. The court is not unmindful that, as in all other civil cases, the plaintiff must prove his case by a preponderance of the evidence. However, it has been repeatedly held by the Louisiana courts that when medical testimony is too vague, indefinite, confusing or contradictory for the courts to draw upon said evidence for an intelligent conclusion that the court should look to lay testimony and the circumstances surrounding the issues in the case in order to arrive at an equitable conclusion. See Bearman v. Fuller Construction Company, La. App., 148 So. 720; Rogers v. Union Indemnity Company, La.App., 146 So. 505. The court citing the above cases said in the case of Hennen v. Louisiana Highway Commission, La.App., 178 So. 654, 656: “It is thus to be seen that we are confronted with a deplorable and irreconcilable conflict in the testimony of members of the medical profession relative to an important issue in the case. When situations of this kind are at hand, and such are not infrequent, the court must look to the lay testimony and to the other evidence for assistance in its endeavor to do justice between the parties.”
In the case of Christy v. Brown Paper Mill Co., Inc., La.App., 27 So.2d 917, 918, the court stated: “The medical testimony unquestionably preponderates in favor of the contention that none of the bones in plaintiff’s body was fractured or seriously injured from the reel of paper falling against him; and if a decision of the issue in the case depended solely upon this sort of testimony, perforce the judgment appealed from would have to be affirmed. But, we are of the opinion that the medical testimony concerning bone injury may be entirely cast aside and yet there remains ample lay testimony in the record to warrant an award in plaintiff’s favor.” For similar general statements see Lowery v. W. Horace Williams Co. et al., La.App., 8 So.2d 704; Crier v. Kent Piling Co., La. App., 12 So.2d 472; Vautrot v. Maryland Casualty Co., La.App., 32 So.2d 500.
The court, in going beyond the medical evidence in reaching an equitable deci-sión, is nqt doing so on a supposition that it wishes to substitute its opinion of those who are specialists in that field, but it must *332 do so when the evidence is confusing and lacking.
In the instant case we find that the plaintiff is a man of about forty three years of age; that he has a robust physique and up to the time of his injury had never required medical attention. He had a limited education and had to depend upon hard physical labor to earn his livelihood and was at all times regularly employed.
After he received the injury to his ear to the date of the trial of this case in the lower court his condition grew progressively worse and he found himself in the hands of a physician continually. It was only several weeks after the accident that his eyesight failed him. Dr. Karr opin-ioned in his report that the plaintiff’s vision was normal, but the lower court found him wearing thick-lensed eye glasses. Then sometime later his tonsils became infected and had to be removed. Plaintiff then found himself suffering from dizzy spells and headaches. He lost his strength in his right limbs and had to seek the use of a cane to hobble around.
Further, Dr. Karr stated in his report of June 28, 1949, that the likelihood of plaintiff dying in the near future was remote. He stated that “the average case of multiple sclerosis will live for easily ten years”. On the 28th day of February, 1950, after the lower court rendered its decision, the plaintiff departed this life. Considering what Dr. Karr said in his report, and the fact that Dr. Horton testified that the trauma could have aggravated the disease, the court is compelled to find that the injury suffered by the plaintiff while in the employ of the defendant aggravated the disease of multiple sclerosis which was dormant in plaintiff at the time of the accident, and to such an extent, as to permanently disable plaintiff, or the said injury contributed to the position that plaintiff found himself in.
As stated before, the plaintiff departed this life on the 28th day of February, 1950, approximately one month after the lower court had rendered its decision in. his favor. Counsel for plaintiff has by proper motion asked this court to substitute the heirs of plaintiff in plaintiff’s stead, introducing a certified- copy of the judgment of possession in the Succession of Charles H. Hebert, which this court has granted. The law of this State is clear that under such circumstances, that is, where the employee has died more than one year after the date of the accident, the heirs are only entitled to the weekly payments that have accrued at the time of the employee’s death. The benefits are personal to the original plaintiff and after his death payments that have not accrued are not heritable. Act No. 20 of 1914, Section 8, subd. 2, as amended by Act No. 242 of 1928, p. 358; Hall v. Southern Advance Bag & Paper Co., La.App., 158 So. 829, affirmed on rehearing La.App., 164 So. 345; Guillot v. Weaver Brothers & Thompson Lumber Co., La.App., 31 So.2d 278.
Therefore, for the reasons assigned the judgment of the lower court is amended by limiting the compensation payments to February 28, 1950, the death of plaintiff, and it is further amended by substituting the following persons as parties plaintiff in lieu of Charles H. Hebert (original party plaintiff, now deceased) : Mary Louise Hebert, individually and in her capacity as natural tutrix of minors Dolores Hebert, Loretta Hebert and Patricia Hebert, and in all other respects affirmed, the costs to be borne by defendant appellant.