GLADNEY, Judge.
Consolidated Underwriters, the workmen’s compensation insurer of Pace Lumber Company, instituted a proceeding by rule under LSA-R.S. 23:1331 to discontinue workmen’s compensation payments to Charles H. Weeks of $26 per week being made under a judgment awarding total and permanent statutory benefits for a back injury sustained February 7, 1951. From an adverse decision plaintiff in the rule has prosecuted a suspensive appeal.
On a prior occasion this court reviewed and affirmed the judgment of December 17, 1951, which recognized that Weeks’ injuries were of a totally and permanently disabling nature and that he was entitled to benefits under the workmen’s compensation statute. Weeks v. Consolidated Underwriters, La.App. 1952, 58 So.2d 289.
In its rule Consolidated Underwriters alleged Weeks has fully recovered from his injury and since January 10, 1952 has performed the same kind or similar work to that he was performing at the time of the accident, and that he is not entitled to fur *480 ther compensation. Weeks denied these allegations and in this court has moved the assessment of a penalty as for frivolous appeal.
The rule under consideration is authorized by the Workmen’s Compensation Act which provides, LSA-R.S. 23:1331:
“A judgment of compensation may be modified by subsequent agreement between the parties, with the approval of a judge of the court which rendered the same.
“At any time six months after the rendition of a judgment of compensation, a judge of the trial court that rendered the judgment shall review the same upon the application of either party for a modification thereof, on the grounds that the incapacity of the employee has been subsequently diminished or increased, or that the judgment was obtained through error, fraud, or misrepresentation. In such cases the provisions of R.S. 23:1121 through R.S. 23:1124 with reference to medical examinations shall apply.”
The sole issue presented herein is whether the incapacity of the employee has diminished since January 10, 1952.
On trial of the rule James A. Pace, W. W. Elshire, Joe Lafitte, C. H. Ferris, N. P. Eaves, Mrs. C. H. Weeks and C. H. Weeks testified as to work performed, the manner in which it was accomplished and the general ability of Weeks to do work of the same or of a similar character as that of a millwright and saw filer, the occupation followed when injured. In addition to the testimony of the above named witnesses there were filed the depositions of Frank H. Boatner and William A. Crain, employees of the Standard Coffee Company.
James A. Pace of the James A. Pace Lumber Company, employer of Weeks, testified Weeks returned to his same job as saw filer and millwright and worked from January 10 to January 23, 1952; that he performed his duties satisfactorily and on one occasion assisted him in lifting about 500 feet of lumber, some pieces weighing as much as 75 pounds. He says Weeks quit, stating the work was harder than he could do. C. H. Ferris, foreman of the same lumber company during the period referred to, said Weeks was not able to do the work and quit because of this reason. He said that on occasions he noticed Weeks while working grimace as in pain. W. W. Elshire and Joe Lafitte worked at a furniture store in Center, Texas, while Weeks was employed at the same place for a few weeks. There he drove a truck and a few times helped move furniture, but the heavy work was done by Lafitte. Both of these witnesses said Weeks complained of his back. N. P. Eaves related Weeks’ financial condition in 1952 was strained. Mrs. Weeks testified her husband consistently complained of numbness and pain in his back and leg and that she used a light on and rubbed the affected areas almost every night. She said his work with the Standard Coffee Company was not hard, but she helped him load his truck and once for four days drove his routes for him while he was ill. Charles H. Weeks testified that since his injury he worked for his former employer as told by Mr. Pace, but had to discontinue this work because of his back. He stated he worked about a week at Babe Fleming’s filling station in Center, Texas, but abandoned this work as being too strenuous. Thereafter he was employed several weeks by George Cogs-well of Center, Texas, 'buying, selling and delivering secondhand furniture. This work was not hard as Cogswell required others to do any heavy lifting. He left this job because of the financial condition of his employer. On November 11, 1952, Weeks went to work for the Standard Coffee Company, making deliveries of their merchandise in the vicinity of Marshall, Texas. There he worked about 40 hours per week and weekly drove a panel truck about 273 miles. His heaviest package weighed 16 pounds which he delivered to a hotel in Jefferson, Texas, every two weeks. He was at the time of trial of the rule, September 17, 1953, still so employed. Weeks testified that when first injured he received $35 per week from an accident policy and he receives a pension of $120 *481 per month from the United States Government. His wages were $20 per week while employed by Cogswell. The effect of his testimony is that he is still unable to resume the- duties of his former occupation of saw filer and millwright without experiencing considerable pain. The depositions of Frank H. Boatner and William A. Crain relate only as to the performance of a coffee salesman, the position of Weeks. They had no personal knowledge of the work performed by Weeks.
For the insurer, Dr. William J. Garland, general practitioner of Logansport, Louisiana, Dr. J. Richard Brown, physician and surgeon of Shreveport, and Dr. W. L. Cloyd, radiologist of Shreveport, gave testimony expressing opinions that Weeks had at the time of their examinations on July 16, 1953, sufficiently recovered from any disability and was then able to perform the duties of a saw filer and millwright. Drs. Garland and Brown had testified on the trial of Weeks’ compensation case. At that time Dr. Garland gave his opinion Weeks had received a moderately severe strain of his lower back and that he was not permanently and totally injured. Dr. Brown testified in 1951 the changes reflected in the X-rays of Weeks’ back were from old injuries sustained by him, and at that time he could not say whether the employee was totally and permanently disabled, but he did say that he would not pass him for industrial work in the condition he found him.
Following the examination of July 16, 1953, Dr. Garland testified his examination took from ten to fifteen minutes. He found no atrophy present and although Weeks did complain of a sharp stabbing pain in the lumbosacral region he did not think the employee was disabled. He made no tests to determine loss of sensation. However, in response to a hypothetical question, he testified:
“Q. Is it not your opinion that a man with the amount of hypothropic arthritis from which Weeks suffers, cannot safely do any manual labor requiring stress and strain on his back without grave danger of reinjury? A. Yes.”
His conclusion, however, was that Weeks had no present disability.
Dr. J. Richard Brown examined Weeks on July 16, 1953, over a period of from fifteen to twenty minutes. He received a completely negative X-ray report from Dr. W. L. Cloyd. He testified Weeks complained of pain but no objective symptoms were observed to substantiate these complaints. His opinion was that Weeks was well and under cross-examination admitted he believed the employee to be a malingerer. It is of some interest to note that the testimony of Dr. Brown given in 1951 was influenced by the conclusions of Dr. O. O. Jones who took the X-rays after the injury with a finding of disability. Dr. Cloyd declared the findings from his pictures and those of Dr. Jones should be the same, that is of a negative nature. Since talcing the X-rays mentioned, Dr. Jones died.
The medical evidence of Drs. S. W. Boyce, Ruffin A. Paine and D. F. Over-dyke, Jr., all of whom testified on the former trial, is based on examinations of Weeks made on July 15, 1953. Dr. Over-dyke was the only orthopedic specialist to give testimony in either trial. Their findings as given upon the first trial indicated evidence of arthritis and some hyperthesia on the left thigh and foot, and they all concluded that he was then totally disabled to perform the work he was doing when injured. Upon trial of the instant rule Drs. Overdyke and Boyce testified positively as to loss of sensation and a narrowing of the fifth lumbar interspace, indicative of a disc injury. They were of the opinion Weeks had shown but slight improvement since their examinations in 1951 and that he is still unable to resume the work he was performing when injured. Dr. Paine was of a like opinion.
The medical testimony, though conflicting, shows no substantial improvement in the employee’s ability to work as a millwright, saw filer or work of a similar nature. It is not expected that he must per *482 form his duties in pain and discomfort. Vaufsrot v. Maryland Casualty Company, La.App.1947, 32 So.2d 500; Godeaux v. Travelers Insurance Company, La.App., 1952, 58 So.2d 427; nor does he forfeit his compensation by accepting employment in dissimilar work. See Morgan v. American Bitumuls Company, 1950, 217 La. 968, 47 So.2d 739, 741, wherein it was stated:
“In cases of total disability it has been held that the employee is entitled to benefits under the statute even though after the accident he engages in, or is qualified to engage in, an occupation dissimilar to that which he was undertaking when injured and more remunerative; and there appears no good reason why a distinction should be made respecting this point in awarding compensation as for partial disability.”
The employee has submitted through lay witnesses in addition to the medical evidence presented, testimony of a substantial nature that he cannot and has not performed such work or followed employment which should cause a decrease or discontinuance of the compensation.
Weeks has, in our opinion, shown by a preponderance of the evidence a continuance of his disability as found upon the former trial and heretofore reviewed on appeal by this court.
We are not impressed favorably with the attempt to assess damages as done where there is a frivolous appeal. The appellant was entitled under law to an appeal and he has taken a suspensive appeal which he has prosecuted forcefully. The motion for damages is denied. See Wilson v. Wilson, 1950, 218 La. 586, 50 So.2d 202, wherein it was held:
"The right of appellant to have the judgment of the District Court reviewed is unqualified, ‘whether such judgments have been rendered after hearing the parties, or by default’, La. Code of Practice, Art. 565, and the fact that the appeal may appear to be frivolous is not ground for dismissal, the remedy being affirmance of the judgment appealed from when the appeal is heard on the merits. Reiners v. St. Ceran, 27 La.Ann. 112; Succession of Damico, 161 La. 725, 109 So. 402; Borden v. Louisiana State Board of Education, 168 La. 1005, 123 So. 655, 67 A.L.R. 1183; Cochran v. Louisiana State Board of Education, 168 La. 1030, 123 So. 664, affirmed 281 U.S. 370, 50 S.Ct. 335, 74 L.Ed. 913; Louque v. Hercules Oil Company, 170 La. 355, 127 So. 866; State v. Up-To-Date Shoe Repairing Co., 178 La. 188, 151 So. 74.”
For the reasons hereinabove set forth the judgment from which appealed is affirmed at appellant’s costs.