This is a suit for workman's compensation, wherein plaintiff alleges that while performing his duties as carpenter for the defendant company, on October 14, 1938, he met with an accident which resulted in an injury to his back. He claims that as a result of said injury he is permanently disabled from performing carpentry work, the kind of work for which he is fitted by experience and training and which he was doing at the time of his injury. He prays for compensation at the maximum rate of $20 per week for a period not to exceed 400 weeks, and for the sum of $250 for medical expenses.
The defendant admits that the plaintiff was employed by it as a carpenter on the date of the alleged accident, and admits that 65 per cent of his weekly wage is in excess of $20; but denies that plaintiff met with the accident alleged in his petition or that he was injured in the course of his employment; and denies further that such injury as he may now have renders *Page 431 
him totally disabled from performing his usual line of work.
On trial of the case, the District Court rendered judgment in favor of the defendant, dismissing plaintiff's suit. The plaintiff has appealed.
The trial judge found that the plaintiff is suffering from a back injury and is unable to perform the kind of work that he was doing while employed by defendant, but dismissed his suit on the ground that plaintiff failed to prove that his injury was the result of an accident as alleged.
We are of the opinion that the lower court was correct in finding that the plaintiff is suffering from an injury to his back which disables him from performing carpentry work, the kind of work which he was doing while employed by defendant, and for which he is fitted by training and experience. This finding is supported by a large preponderance of the evidence, particularly the testimony of the medical experts, Doctors Herpich, Battalora and Caldwell, to the effect that plaintiff is suffering from sacro-iliac strain or strain of the lumbo-sacral ligaments in the lower back. Since it is established that plaintiff is suffering from a disabling back injury, the only serious question presented to us on appeal is whether or not the lower court's finding, to the effect that plaintiff has failed to connect said injury with an accident sustained in his employment, is erroneous.
The plaintiff testified that on the night of October 14, 1938, at about 10 o'clock, he was engaged in the installation of concrete forms for window sills in one of defendant's buildings, and that as part of his job he had to remove some steel sash leaning against the wall on the outside of the building; that as he stepped back while holding onto one of these steel sashes he stepped in a depression and fell over backward and immediately felt a sharp pain in the lower part of his back and thought that he had wrenched his back. He states that he reported the accident to a co-worker, who was on the inside of the building, and that this co-worker advised him to go to the company hospital or first aid station; that he worked a short time after he fell, but had to stop because of severe pain; that he reported to the foreman who gave him an order to the hospital. He states that he told the foreman how he got hurt. It is shown that he was examined at the first aid station, and that his back was strapped, and that he went home for two or three days, and that afterwards he was given light work. It is shown also that he was treated from time to time and worked off and on at light work for the company until June 14, 1939, a little more than eight months after he reported the accident to his foreman.
From a report sheet introduced in evidence it appears that plaintiff was treated regularly from October 14, 1938, to June 14, 1939, for lower back strain, or a sacroiliac strain. This treatment was given under directions of the company doctor and consisted of strapping his back, infra ray treatments, and administering of medicines and remedies customary in such back complaints. As stated above, during most of this time, plaintiff was given light work. He claims that for a short period in February, 1939, he went back to his regular job for a few days and was unable to continue on account of pain in his back.
The evidence shows that plaintiff had been working as a millwright and carpenter for a number of years prior to his alleged injury without any apparent trouble with his back or any other disability. He first went to work for the defendant company in September, 1937, as a millwright and worked in that capacity, with the exception of a lay-off of a few months, until March, 1938, when he was employed as a carpenter, in which latter capacity he served defendant without complaint of disability or injury until October 14, 1938, the date of the alleged accident. There is no evidence in the record to show, even remotely, that he sustained an injury to his back prior to October 14, 1938, either in the course of his employment or anywhere else, nor is there any evidence indicating that he ever suffered from any congenital condition affecting his back.
In view of these facts and circumstances, unless the statement of the plaintiff to the effect that he fell while lifting the steel sash is not to be believed, his present injury would seem to be the direct result of such accident. It is very true that no one saw him fall, but it is also true that he told Gremillion, his co-worker, about it immediately after he claims to have fallen, and that Gremillion must have believed him at the time since he advised him to report to the first aid station. At the trial, Gremillion turned out *Page 432 
to be a hostile witness and attempted to convey the idea that plaintiff suggested to him a few days before the alleged accident that he, Gremillion, could work a scheme on the company when he had received a notice of discharge, but that testimony apparently did not impress the trial judge and does not impress us. Gremillion also stated that he went outside and looked for the hole that plaintiff claimed to have fallen into and that there was no hole there. However, the plaintiff did not testify that he fell in a hole, but merely that he stepped off in a depression in the ground and fell back from the weight of a heavy steel sash. The fact remains that Gremillion bears him out in his testimony to the effect that he complained of the fall immediately after it is alleged to have occurred. The testimony of the foreman and the various doctors who examined him is all to the effect that plaintiff consistently explained his injury by having fallen in the manner set forth. And it would seem that the only logical explanation appearing in the record for plaintiff's disabled condition subsequent to October 14, 1938, is that he suffered an accident as consistently related by him. Certainly, the fact that he happened to have been alone when he sustained the accident, rendering it impossible to produce eyewitnesses thereof, should not bar his recovery in this suit if the surrounding facts and circumstances offer convincing corroboration of his story.
The trial judge appears to have doubted plaintiff's credibility because he apparently felt that plaintiff made a false statement as to his financial condition when he filed this suit in forma pauperis, and also because he, the trial judge, apparently had the impression that plaintiff endeavored to cover up some of his earnings and activities from the time he claimed to have been injured until he was discharged by the company and even up to the time of the suit. While it is true that plaintiff was on the company payroll until June 14, 1939, and was during part of that time and subsequent thereto engaged in contracting for building houses for others and superintending the work on these houses, all of which brought him revenue, and probably strictly speaking prevented him from being entitled to file his suit in August, 1939, in forma pauperis, yet we realize that it is often the practice of attorneys to have their clients sue in forma pauperis when strictly speaking they are not entitled to do so, and we do not find from the evidence that plaintiff's revenues at the time of filing the suit was such as to place him clearly outside the benefits of the forma pauperis statute. We feel that he could have been somewhat more candid and open with reference to his financial condition and his activities in taking contracts for various buildings; but we do not believe that he deliberately tried to mislead the court or misrepresent these matters, and we feel that the lower court should have given more weight to his testimony on the pertinent issues in this suit.
Of course, the mere fact that plaintiff was able to earn, and did earn, a considerable income in another line of business, after his injury, does not bar him from the recovery of compensation if he was disabled from doing the kind of work which he was doing when he was injured. See McQueen v. Union Indemnity Company, 18 La.App. 612, 136 So. 761, and Anderson v. May, La.App., 195 So. 783.
In view of the above considerations, we are of the opinion that the plaintiff has proved to a legal certainty that he sustained an accident on the night of October 14, 1938, while employed by the defendant as carpenter, and that as a result of said accident he is suffering from an injury to his back, totally disabling him from engaging in such carpentry work.
It is therefore ordered that the judgment of the district court be and it is hereby reversed, and that plaintiff have judgment against the defendant for compensation at the rate of $20 per week from October 14, 1938, for a period not to exceed 400 weeks, with 5 per cent per annum interest on delinquent installments, less a credit for the number of weeks subsequent to his injury from October 14, 1938, to June 14, 1939, during which he was paid his wages, at the costs of defendant in both courts. *Page 433