This is a compensation suit in which plaintiff seeks to recover for total and permanent disability, resulting from accidental injury in the course of his employment.
On or about the 20th day of December, 1940, while employed as a common laborer, plaintiff was engaged in a grading operation on a construction job of the defendant employer. According to plaintiff's testimony, he was using a mallet for the purpose of grading down high places, filling in low places, and, generally leveling off the lot upon which the construction was taking place. While wielding the mallet, the instrument struck some hard substance and a splinter or fragment thereof struck plaintiff in the left eye, causing a severe injury to that organ. From the testimony of the attending physician it is determined that the injury resulted in a traumatic cataract. As a result, plaintiff has lost the use of his left eye, with the exception of ability to perceive hand motions. Compensation was paid plaintiff for a period of 100 weeks, but he contends that he is totally disabled, that he continues to suffer severe and excruciating pain in his left eye and the left side of his head, impairment of vision of the other eye due to extreme pain, extreme dizziness and loss of his sense of equilibrium, all of which he attributes to the pain resulting from the injury sustained.
Plaintiff received compensation payments over a period of 100 weeks, in accordance with the provisions of the statute fixing compensation for the loss of an eye. On trial of this suit there was judgment in plaintiff's favor in an amount of $1.56 per week for a period of 100 weeks, beginning December 20, 1940, which amount was fixed by the trial Judge as the difference between amounts actually paid as compensation and the amount due upon the basis of plaintiff's actual wage. The demands of plaintiff were otherwise rejected by the judgment, from which he prosecutes this appeal.
There is only one issue involved in this case, which issue concerns purely the determination of a question of fact, namely, is the plaintiff totally and permanently disabled from performing the kind of work in which he was engaged at the time of *Page 448 
the injury, or work of any reasonable character?
On trial of the case plaintiff testified that since the time of the injury he had continued to suffer such severe pain in the left side of his head as to prevent him from holding a job. It is evident from the facts adduced on trial that plaintiff has always been a common laborer, and has at various times engaged in work on odd jobs, nursery and landscaping, and has worked as a common laborer in the employ of various contractors. There was also some testimony to the effect that on occasions plaintiff had done some carpentering. There was no real attempt to prove that plaintiff has been anything except a common laborer, in which work he was engaged at the time of the injury. Plaintiff further testified that at various times since the injury he had attempted to secure employment, and, as a matter of fact, had worked for a few days with a fertilizer concern in Shreveport. It was during this brief employment that plaintiff claims to have "fallen out" while engaged in pushing a wheelbarrow in the course of his work. An attempt was made to corroborate plaintiff's story by several witnesses who were fellow employees of the same concern at the time, but none of them actually saw plaintiff fall out, and a summary of their testimony only shows that they knew that he was taken from the job in an ambulance and sent to the Tri-State Hospital.
Plaintiff was hospitalized on several occasions after the accident, and complete hospital records and charts were introduced in evidence on trial of the case. The evident purpose of the introduction of these records was to prove that plaintiff suffered from severe pain in the injured eye during the several periods of his confinement in hospitals, and was treated for pain by administration of drugs. Plaintiff was first admitted to the Tri-State Hospital on December 21, 1940, the day after the accident, and was there confined for a period of about three weeks. He was re-admitted to the same hospital February 8, 1941, discharged March 3, 1941; was admitted to North Louisiana Sanitarium March 24, 1941, discharged March 26, 1941; was re-admitted to Tri-State Hospital on March 29, 1941, discharged on April 1, 1941; re-admitted on April 9, 1941, discharged April 12, 1941; re-admitted on April 18, 1941, discharged April 20, 1941; re-admitted April 25, 1941, discharged May 3, 1941; re-admitted May 10, 1941, discharged May 11, 1941; re-admitted May 17, 1941, discharged May 18, 1941; re-admitted May 24, 1941, and discharged the same day.
It is true that the hospital records on the occasions above enumerated show conclusively that plaintiff complained of pain in his left eye, and was given drugs for the relief thereof. However, these records, taken in conjunction with the testimony of the attending physician, are not indicative of any unusual condition. There can be no question as to the fact that plaintiff at the time of the injury, and for several months thereafter, suffered severe pain, and the specialist who treated him testified that he performed a number of operations known as "paracentesis," intended to relieve accumulations of water in the eye, thereby relieving a resulting tension.
There is nothing in the record to indicate that plaintiff found it necessary to return to a hospital for treatment after about May 24, 1941, and the testimony of the specialist, who treated the case, shows that he began treatment on December 21, 1940, and continued his treatments of the patient until August 2, 1941, which was the last occasion upon which he had seen plaintiff prior to the trial of the case.
The testimony of Dr. G.H. Cassity, a general practitioner of Shreveport, was offered by plaintiff in support of his claims. This witness was not an eye specialist, and, for this reason, the weight of his testimony was considerably lessened. A summary of his findings indicates that his conclusions were drawn principally from the history of the case given by plaintiff, and from subjective symptoms which he noted. The only claim of objective symptoms made by this witness was based upon certain reflex actions, indicating a nervous condition, which, in the doctor's opinion, could or might have resulted from the injury. On the whole, the testimony of this witness amounted to little more than an opinion, based upon speculation, leading to conclusions of possible permanent disability.
Another general practitioner, Dr. E.T. Hilton, called as a witness for plaintiff, testified that he examined plaintiff at some time during the fall of 1943 for the purpose of determining his fitness for employment by the Magnolia Petroleum Company, and that he recommended the plaintiff not be employed. However, this witness, on cross-examination, *Page 449 
stated that his examination of the plaintiff led him to the conclusion that plaintiff was not incapacitated to perform manual labor. Subsequently, this witness was placed upon the stand by the defendant and testified as to the causes of his rejection of plaintiff, which causes were lack of vision in the left eye and high blood pressure. The witness further testified that the injury to the eye, in his opinion, had no effect upon the blood pressure.
Dr. L.W. Gorton, an eye specialist of many years experience and distinguished reputation, was placed upon the stand as the joint witness of both plaintiff and defendant. Dr. Gorton began his treatment of plaintiff on December 21, 1940, the day after the accident, and continued to treat him until August 2, 1941. It was upon his orders that plaintiff was hospitalized on the occasions above noted, and he performed the necessary operations for the relief of plaintiff's condition. Upon his first examination of plaintiff, Dr. Gorton determined that he was suffering from a punctured cornea, which caused a traumatic cataract. This injury superinduced a secondary glaucoma, and it was for the relief of this condition Dr. Gorton found it necessary to perform the several paracentesis operations.
This witness testified that on the occasion of his last examination of the plaintiff the eye was quiet, and he found no condition which, in the light of his experience, would have caused pain of such severe nature as to prove disabling. He further testified very frankly that any severe eye injury would be expected to cause recurrent pains, but, not of such duration or severity as to prove disabling. This opinion was further strengthened by an examination of plaintiff made during the trial of the case, as the result of which examination the witness testified again that he could find no symptoms which would indicate disability.
The conclusions expressed by Dr. Gorton were concurred in by another distinguished specialist of Shreveport, Dr. W.L. Atkins, who examined the plaintiff at defendant's request on November 15, 1943, and again during the trial of the case. Dr. Atkins found the eye quiet and his examination disclosed nothing that would indicate disability. The witness testified that he had been hampered in his examination by the non-cooperative attitude of the plaintiff, who refused to submit willingly to tests, and, by his attitude, showed that he was attempting to mislead the doctor in his examination.
Both Dr. Gorton and Dr. Atkins testified that plaintiff was failing to assist in his own recovery by his insistence in wearing extremely dark glasses, which habit had the effect of making his eyes extremely sensitive to light and precluded the possibility of proper examination of the degree of light perception of his eyes. Dr. Gorton testified that he had attempted on several occasions during his treatment of plaintiff to prevail upon him to discontinue wearing these glasses.
[1, 2] On the whole, an analysis of the record definitely convinces us that plaintiff has failed to prove his claims of disability. As has been stated many times before, the plaintiff in a compensation case is required to prove his claims by a preponderance of the evidence, and not by conclusions based upon speculation or possibility.
[3] It is quite true that symptoms of pain of necessity are subjective in nature, and the existence, vel non, of pain is a fact known with absolute certainty only by the individual who claims to experience pain. However, as a practical proposition, complete faith cannot be accorded to claims of an injured party as to the existence of the pain simply upon the basis of his own testimony, and, for that reason, it is required that such evidence be strengthened by corroborative circumstances and testimony which would lead to an acceptance of such claims. We do not find that such necessary support has been produced on behalf of plaintiff in this case. On the contrary, defendant has shown by expert testimony of the highest quality and degree the complete lack of any objective symptoms which would justify a conclusion of disability.
For these reasons, the judgment appealed from is affirmed. *Page 450