76 So.2d 25 (1954)
Roy J. ZITO
v.
STANDARD ACCIDENT INSURANCE CO.
No. 3898.
Court of Appeal of Louisiana, First Circuit.
November 18, 1954.
Rehearing Denied December 10, 1954.
*26 Dodd, Hirsch & Barker, W. T. Wise, Baton Rouge, for appellant.
Watson, Blanche, Fridge, Wilson, Posner & Thibaut, Baton Rouge, for appellee.
ELLIS, Judge.
This is a suit by the plaintiff in which he is seeking compensation as for total and permanent disability as the result of an alleged accident and injury on October 19, 1951 while employed by Robert Thibodeaux and Co., Inc., as a carpenter.
This suit is against the insurer of Robert Thibodeaux and Co., Inc.
Plaintiff alleged that on or about Oct. 19, 1951 he was employed by Robert Thibodeaux and Co., Inc., as a carpenter and on that date he was removing a form that measured eight feet deep and fourteen feet long with several fellow employees when he felt a strain in his back, and solely on account of the accident in lifting the form and the resulting injury to the back he is unable to perform the regular work of his trade, and accordingly prayed for the maximum amount with the usual interest for a period not exceeding four hundred weeks, and for medical and hospital expenses.
The defendant denied in general all allegations of plaintiff's petition with regard to the accident, injury and disability.
After trial the Lower Court in its written reasons stated: "The plaintiff, in my opinion, has failed to carry the burden of proof which rests on him, in that he has failed to prove to my satisfaction by a preponderance of evidence that the injuries to his back about which he complains in this suit are attributed to an accident received by him while in the employ of the insured, Robert Thibodeaux and Company, Inc."
"Therefore, for these reasons, judgment is rendered and will be signed, dismissing plaintiff's suit at his costs."
Plaintiff has appealed from this judgment.
It is the defendant's contention as stated in its brief that:
"Plaintiff not only failed to prove an accident occurring within the course and scope of his employment by a preponderance of the evidence, or a causal connection between such accident and his alleged injuries and disabilities, but failed completely to prove a disability."
Plaintiff filed a supplemental and amended petition which was objected to but allowed by the District Court, and correctly so, changing the alleged date of his accident to October 15, 1951 rather than October 19, 1951.
Did plaintiff prove that he had suffered an accident as alleged?
Plaintiff testified that on October 15, 1951, which was the last day that he and all other carpenters except one worked for Robert Thibodeaux and Co., Inc., that he was assisting in the lifting of a wooden form the weight of which was estimated by various witnesses from 400 to 600 pounds but which it can be fairly stated was proven to have weighed approximately 450 pounds, when he felt a catch in his back as a result of a let down of weight by one of the other lifters. In about ten minutes after feeling the catch or pull in the lower part of his back he told a fellow employee, Duplissis, that he had hurt his back in lifting the form. The fact that plaintiff complained to his fellow employee of having hurt *27 his back was objected to as hearsay and not a part of the res gestae. The Court allowed the testimony subject to the objection, however, later in the trial of the case ruled in effect that it was not admissible because it was hearsay. The Court in its ruling recognized the holding in Kilman v. Smith, La.App., 28 So.2d 499, and Arrington v. Singer Sewing Machine Co., La.App., 16 So.2d 145, in which it was held that hearsay evidence is admissible in compensation cases under the express terms of the Act, LSA-R.S. 23:1021 et seq. Without going into the merits or demerits of the two cases cited, they do hold squarely that such evidence was admissible and in both cases certiorari was denied by the Supreme Court. The trial Judge merely stated that the admissibility vel non of hearsay evidence in a Workmen's Compensation case should be squarely determined, and it was his opinion that the act did not permit the introduction of hearsay evidence.
It was held in Duracher v. Canulette Shipbuilding Co., La.App., 21 So.2d 100, that self-serving declarations are admissible in a compensation case since rules of evidence are relaxed therein.
Under the authorities cited the testimony of Duplissis to the effect that within ten minutes after the alleged accident plaintiff complained to him that he had hurt his back in lifting the form is admissible. This testimony is not absolutely necessary to a decision in the case as there are other corroborating factors which are sufficient to prove that plaintiff suffered the accident and injury to his back while employed by Robert Thibodeaux and Co., Inc.
During the forenoon of October 15, 1951 plaintiff had stuck a lead pencil into one of his fingers and it was necessary that he be taken to Dr. Dowell, who removed the lead which had broken off in his finger. Plaintiff returned to work and it was during the afternoon that he is alleged to have injured his back. It was not until October 19th, 1951 that he returned to Dr. Dowell as per the latter's instructions with regard to the finger. It was on that trip that he reported his back injury to what he termed the company doctor.
Plaintiff rode to his home at Plaquemine that night with a friend and stated that when he got out of the automobile to walk a few blocks to his home his back was paining him excessively. There is no testimony to this fact by the person who drove him to within several blocks of his home nor is there any testimony by his wife in the record.
It is shown that the next day plaintiff returned to his employer's office in Baton Rouge and requested pay for the time he had spent at the doctor's office. He was given a check for this amount and engaged in a very friendly conversation with the bookkeeper and office manager, Eldridge Townsend, but did not mention his back condition or that he had hurt it on the job the day before. Plaintiff's explanation of why he made no complaint at this time was to the effect that he had hurt his back somewhat in the same manner on a prior job in 1951 and had said nothing about it and in three or four days it got well, and he thought the same thing might happen this time. Under the circumstances and from other facts which will be later discussed in the case, we feel plaintiff was perfectly honest in his explanation. This is the plaintiff's first claim for compensation.
Plaintiff returned to his home on the 16th of October and stated that his back continued to pain him and that he attempted to contact Dr. Rhodes Spedale of Plaquemine but failed. Plaintiff testified that after failing to get Dr. Spedale, by using boards and sleeping on the floor about two hours and then getting in the bed he was able to obtain some relief. There is nothing in the record to show that between the time plaintiff felt the catch in his back and the beginning of pain some hours later that he had done anything to strain himself other than the performance of his duties as a carpenter for the rest of the day of October 15, 1951.
On October 17th plaintiff testified that he had to push himself out of the bed in order to get out and up into a sitting position. *28 On October 19th plaintiff reported back to Dr. Dowell as instructed about his finger and it was at this time that he told Dr. Dowell of having hurt his back in lifting a form or forms for the Robert Thibodeaux Company.
The defendant would make much of the fact that Dr. Dowell testified he understood plaintiff to tell him that he had injured his back on the same day he visited him on October 19th, 1951, but when Dr. Dowell's testimony is examined it will be found that he also stated that plaintiff told him it was hurt by lifting forms for the Thibodeaux Company. There is no doubt but that Dr. Dowell misunderstood plaintiff for it would have been utterly ridiculous for this plaintiff to have told Dr. Dowell that his accident occurred on October 19th, 1951 when he well knew that he had not worked for this employer since October 15, 1951. Dr. Dowell testified that he saw this plaintiff for the first time with regard to his back injury on October 19th, 1951 and that "He gave a history of having injured his back while helping move some heavy forms," while employed by Robert Thibodeaux and Company. He found at that time "tenderness over lumbosacral joint, spasm of the paravertebral muscles and limited back motion" and that plaintiff was apparently suffering pain at the time. Both Dr. Dowell and Dr. Spedale agree that the symptoms found by Dr. Dowell were objective and positive insofar as an injured back was concerned. Dr. Dowell at that time diagnosed plaintiff's trouble as lumbosacral sprain and prescribed adhesive back strapping which was followed by a lumbosacral support and also recommended a firm bed, bed boards and head treatments. Dr. Dowell when asked to give his opinion as to plaintiff's ability to continue working as a carpenter without suffering any pain testified:
"A. I felt he was able to continue working with the use of the support. I might say he indicated that he wanted to continue working at that time and as long as his back was supported I saw no reason for him not to continue working.
"Q. In your opinion would he have suffered a great deal of pain in his work as carpenter?
"A. I don't think he would.
"Q. Would working as a carpenter, including lifting, bending of the body or rotating of the body have retarded his recovery?
"A. Of course, I might say before I answer that, the back support limited the bending of the body and rotating of the body. I don't feel he should have done heavy lifting at that time. I would say that if he had done heavy work that might have well retarded his recovery, yes, sir."
Dr. Dowell also had x-rays made in October 1951 and repeat x-rays made in October 1952. While these x-rays revealed some abnormalities in the lumbar vertebrae, Dr. Dowell did not connect them with the injury or strain.
In support of defendant's contention that plaintiff did not suffer an accident or has not proven that he suffered an accident, it cites the failure of plaintiff to report any such accident and injury to his employer or the defendant insurance company. On this point plaintiff testified that as he was taken to Dr. Dowell for his finger he recognized him as the company doctor, and Dr. Dowell had told him that he would make a surgeon's report and he thought that this would be all the notice required. Dr. Dowell did make such a surgeon's report and testified that he had received word after making his initial surgeon's report that the insurance company had no record of plaintiff's injury and would assume no responsibility for the medical bills. Dr. Dowell had written such a letter in December 1951. This testimony is conclusive proof that the insurance company received notice of the plaintiff's claim.
In addition to the above testimony on the question of whether or not plaintiff has proven an accident and a causal connection between such accident and his alleged injuries and disability, it is also *29 shown that plaintiff is admittedly in no manner considered a malingerer but on the contrary was very frank and honest and cooperative with the doctors and all parties concerned. His action in going back to the company doctor showed good faith on his part. If he intended to defraud his employer or the insurance company by a fraudulent claim, his actions would likely reveal a planned effort to bolster his case. For example, he would not have carelessly left the reporting of the accident to Dr. Dowell. It appears from the testimony that plaintiff has clearly proven an accident within the meaning of the law and a causal connection between the accident and his alleged injuries and disability which will be hereinafter discussed. In other words, plaintiff has proven that he was lifting these heavy forms together with other employees of the Robert Thibodeaux Company on October 15, 1951, and he felt a pulling sensation in the lumbosacral region of his back and that he suffered some disability if we accept the testimony of Dr. Dowell which we must.
In passing upon the question of whether plaintiff has proven his accident, it is well to remember that even in cases where the employee is unable to produce other eyewitnesses of the alleged accident in which he sustained injuries, he is not barred from recovery of compensation if his explanation of the accident and injuries was corroborated by surrounding circumstances. Sumrall v. E. I. Du Pont De NeMours & Co., La.App., 1 So.2d 430; McCray v. Yarbrough, La.App., 20 So.2d 447; Verbois v. Standard Accident Co., La.App., 25 So.2d 97; Dolhonde v. Gullett Gin Co., La.App., 25 So.2d 104; Cascio v. Standard Oil Co. of New Jersey, La.App., 32 So.2d 66; O'Connor v. American Automobile Insurance Co., La.App., 32 So.2d 624; Johnson v. Brown Paper Mill Co., Inc., La.App., 35 So.2d 774; Franks v. Department of Highways for Louisiana, La.App., 43 So.2d 491.
In this case plaintiff is corroborated by the witness Duplissis, by reporting to Dr. Dowell on October 19th, 1951 the accident and injury to his back, and the causal connection between the accident and injury and disability on October 19, 1951 as shown by Dr. Dowell's testimony. Therefore, the proof offered by plaintiff is sufficient to establish the accident and the causal connection between it and his injuries as well as disability when examined on October 19, 1951, by Dr. Dowell.
The next question to be decided is the extent of plaintiff's disability. This presents a more serious problem. On this point plaintiff testified that he continued to work as a carpenter on various jobs as he had previously done but that he suffered pain while working. His reason for working while suffering pain was that he had a wife and children to support, that the insurance company refused to pay his medical bills or allow him any compensation, and that he was forced to work rather than see his family suffer.
It would seem that plaintiff's success or failure in this case would depend upon whether he actually worked with pain, for the cases are many in which our Courts have held that although an injured workman is able to perform his duties he would nevertheless be classed as disabled if the physical activity caused him to suffer pain. Stieffel v. Valentine Sugars, Inc., 189 La. 1091, 179 So. 6; Vautrot v. Maryland Casualty Co., La.App., 32 So.2d 500; Hibbard v. Blane, La.App., 183 So. 39; Anderson v. May, La.App., 195 So. 783; Anders v. Employers Liability Assurance Corporation, La.App., 50 So.2d 87, 90.
In the last cited case it was stated:
"With respect to the argument that plaintiff is not suffering permanent and total disability, we need only to call attention to the fact that our jurisprudence has quite conclusively established the fact that the measure of disability is not predicated solely upon the ability to work but also upon the ability to work without pain. An employee is totally disabled if he suffers any substantial amount of pain while performing work of the same character as that in which he was engaged at *30 the time of his injury. Lee v. International Paper Co., La.App., 16 So.2d 679; Gilmore v. George W. Garig Transfer, Inc., La.App., 33 So.2d 99.
"Nor is a claimant prejudiced by the fact that the necessity for attempting to support his family by working, even under penalty of pain, requires him to make the effort. Carlino v. United States Fidelity & Guaranty Co., 196 La. 400, 199 So. 228."
Dr. Dowell, after finding plaintiff suffering with the back injury on October 19, 1951 and further being of the opinion that he should not have done any heavy lifting, saw plaintiff again on October 29th, November 2nd, November 13th, November 26th, December 19th, January 13th, 1952, February 8th, 1952, February 28th, 1952 and again for the purpose of examination on October 17th, 1952, just prior to the trial. There is no doubt from Dr. Dowell's testimony that during this time and up until February 8th, 1952 plaintiff had not fully recovered. On February 11th, 1952 Dr. Dowell testified that he made a report to plaintiff's attorney and at that time he stated there was some tenderness to the right of the lumbosacral joint and "I felt at that time he had not completely recovered." It is to be remembered that this was a portion of the period that plaintiff claimed that he worked with pain. Plaintiff's claims up to and through February 8th, 1952 are supported by Dr. Dowell.
From February 11th to May 23rd, 1952 plaintiff was not treated by any doctor, however, on the latter date he went to Dr. Spedale of Plaquemine, Louisiana. He stated that he made this change only because he had been unable to see Dr. Dowell on some occasions and that Dr. Spedale was his family doctor and both lived in the same town. Plaintiff has offered the testimony of several co-employees on different jobs where he worked to substantiate his claim of pain. While this testimony is not too strong, these several co-employees in effect state that he shirked work involving heavy lifting and that he apparently did not do his work as well as he should and that he had shown one of them his brace and told them that he had hurt his back, yet there is no reason to believe that their testimony is entirely fraudulent and false, for during part of this time plaintiff was being treated by Dr. Dowell who still found him disabled on February 8, 1952. Dr. Dowell, as a result of his examination of October 1952 just prior to the trial, was of the opinion that plaintiff had recovered and found no muscular spasm or other objective symptoms.
Dr. Spedale testified that plaintiff had consulted him on May 23, 1952 for an injury to his back, and chiefly complained of pain in the lumbar back which radiated down his left hip. He stated that plaintiff had given him a history of having been injured on or about October 1951 while working for Robert Thibodeaux and Co. while helping to move some heavy forms at which time he felt some pain in his lower back. Dr. Spedale, as a result of his examination on this date, diagnosed plaintiff's trouble as lumbar sacral sprain with associated left sacroiliac strain. He found paravertebral muscular spasms at the level of the third, fourth, fifth and first sacral vetebra. Dr. Spedale stated that vertebral muscle spasm was indicative of an injury to the lower back, and he was of the opinion that in May the plaintiff's injury was approaching from a sub-acute to a chronic stage. He was definitely of the opinion that the plaintiff's recovery would certainly be retarded if he continued performing the duties of a carpenter which required much lifting, bending, stooping or remaining in an awkward position for any length of time. Dr. Spedale was also positive in his testimony that the plaintiff with such a back injury as he found could not perform the work of a carpenter without feeling severe pain and discomfort. He stated that the paravertebral spasm was an objective finding that corroborated or tended to justify plaintiff's complaints. Dr. Spedale saw plaintiff again on Tuesday, October 21st, prior to the trial and stated "* * * and my opinion is that he still has a bad back." He also testified that it was his advice that plaintiff should resume some occupation of light labor involving no heavy *31 lifting, bending or stooping. He advised light work for it was his belief that with no work at all people suffering as the plaintiff would develop a mental state which would make them feel that they could not go back to work. He also suspected in plaintiff early signs of a disc injury. While testifying with regard to the present time and whether there was a past finding of paravertebral sprain, he testified that it was not as pronounced as they have been "but there's still something there." He had given and at that time was still giving plaintiff diathermy treatments. Plaintiff had made 34 visits and the doctor's bill for his treatment was $162.
Considering the fact that this plaintiff was apparently from the beginning and throughout the trial in good faith and was in no wise a malingerer, and even though it would appear to have strengthened his case had, or could he have, produced his wife and more fellow employees with regard to evidences of pain at home and during work, the testimony is sufficient to prove the accident, resulting injury to his back and total disability of the plaintiff.
The question is presented as to whether the defendant is entitled to credit for the wages paid to the plaintiff by other employers for work as a carpenter between October 15, 1951 and the date of the trial.
This question was presented to this court in the case of McKenzie v. Standard Motor Car Co., La.App., 15 So.2d 115, 118, and we held:
"* * * We are of the opinion, as pointed out in the case of Thompson v. Leach & McClain et al., supra, that there is a difference in the matter of allowing wages to take the place of compensation depending on whether the injured employee continued to work for the same employer he was working for at the time he was injured or was working for some one else. As long as he is receiving wages from the same employer which are the equivalent of or in excess of the amount of compensation he is entitled to, he is getting that from the party who insured him against his disability and who owes him compensation. On the other hand, when he goes to work for some other employer, under the same circumstances, he is receiving wages from a party who owes him nothing in the way of compensation as he had never insured him against disability on the job he was injured on, and the total amount he receives therefore bears no relation whatever to the compensation he is entitled to recover from the original employer, or his insurer, and which has already been established."
It is therefore ordered that the judgment of the District Court be reversed and there be judgment in favor of the plaintiff and against the defendant, awarding to plaintiff compensation in the amount of $30.00 per week beginning October 16, 1951, not to exceed 400 weeks, with interest at the rate of 5% from maturity date on each installment.
It is further ordered that there be judgment in favor of the plaintiff and against defendant for the medical expenses in the amount of $162 due Dr. Spedale, $75 due Dr. Dowell, and $50 due Dr. Malen, defendant to pay all costs.
CAVANAUGH, J., dissented.
CAVANAUGH, Judge (dissenting).
I respectfully dissent from the majority opinion in this case because I believe that the preponderance of the evidence does not show that the plaintiff experienced an accident arising out of, incidental to, or during the course of his employment. The plaintiff testified that he injured his back while lifting forms. The corroborating evidence offered is that in the form of a statement made to the co-worker Duplissis about ten minutes after the accident is purported to have happened. Plaintiff testified that he suffered the strain when he and his co-workers were pulling on the ropes and that the rope he was pulling on slipped. The other witnesses who were pulling on this form at the same time along *32 with the employee Duplissis did not corroborate plaintiff in the happening of the accident. Plaintiff is not corroborated by Duplissis that the rope slipped. He is only corroborated in his statement that he told him that he hurt his back. Surely if this form, weighing anywhere between four and six hundred pounds, had slipped or the rope being handled by plaintiff had slipped causing the sudden jerk and strain on his back such a happening would have been observed by the other employees who were at that time engaged in lifting the form along with plaintiff. He made no suddent outcry or demonstrable emotion of suffering an accident producing pain in his back at that time. Plaintiff on the afternoon he claims he experienced the back strain stated that he could hardly get to his home after alighting from the conveyance which carried him back to Plaquemine and that he was suffering such excruciating pain he had to lie down on the floor and did not rest any hardly that night. He went to the defendant's office the following morning on October the 16th to adjust the matter for docking him for one or two hours work the day previously on account of going to Dr. Dowell for the purpose of having the broken point of a lead pencil removed from his thumb, which accident he had experienced in the morning preceding the back strain late in the afternoon of the same day. He made no complaint or report at that time to the defendant and when he left defendant's office he was very solicitous of other work and told defendant's bookkeeper that if the defendant needed him where to get in touch with him through his brother-in-law in Plaquemine. It was not until four days later, or on October 19, 1951, that plaintiff returned to Dr. Dowell for further treatment of his injured thumb and it was then that he mentioned about straining his back when lifting the form. The excuse given by the plaintiff for not reporting the accident on the afternoon it happened or on the following day to the defendant was that he had suffered a previous back strain and he thought that it would only be temporary and that he would get all right. Dr. Dowell corroborates the plaintiff in that he reported the back strain to him on October 19 or four days after it is claimed to have happened. He recommended a back support and that plaintiff continue working. He resumed carpentry work the following week, or just as soon as he was able to get another job assignment through his local union.
It is like defendant said it has no way of knowing Plaintiff hurt his back if he actually suffered a back strain.
The majority opinion commends the plaintiff for his good faith to approve his conduct following the alleged accident and his unfamiliarity with his rights under the compensation law. Plaintiff's excuse and the reasons he assigned for not reporting the accident and continuing to work as a carpenter are not compatible with his claim for total disability. In the first place plaintiff had served as a steward on some of the jobs on which he worked and had been working as a journeyman carpenter for contractors for several years. He knew all about his rights under the labor relations law and it was for that reason that he wasn't going to be docked for the hour or two hours time he lost in going to Dr. Dowell for the removal of the lead pencil point in his thumb. Neither is his failure to report to some doctor Friday night or Saturday morning, or at least report to somebody connected with the defendant, about the injury to his back compatible with his request for an immediate work assignment.
The record further shows that Dr. Dowell believed that at the time the case was tried the plaintiff had fully recovered from any disabling effects of his back strain. His testimony should be accepted to that of Dr. Spedale, who had been employed by plaintiff's counsel to treat the plaintiff after he had discontinued going to Dr. Dowell. I believe if any award is warranted in this case under the evidence contained in the record it should be limited to compensation up to the time of the trial. This would be fully supported by Dr. Dowell's testimony and plaintiff's work record. I am not impressed with the matter of plaintiff being *33 able to collect compensation and at the same time drawing wages for work of a similar character he is performing. Plaintiff's job assignments are through his local union and when one of its members are assigned to work for an employer they at least say to the employer, expressly or impliedly, that the employee is able to do the work assigned to him. The only time that you ever hear of the question of light work or an employee not being able to do the work assigned to him is when the question of disability arises in one of these compensation suits and when an employee is attempting to collect compensation during the period of time which he has earned and collected wages. This kind of practice should not commend itself to a Court of justice regardless of the liberal construction courts place on the law and evidence in these cases.