LOTTINGER, Judge.
This matter is before us on a suspensive appeal taken by the defendant from a judgment of the lower Court awarding the plaintiff workmen’s compensation benefits for 400 weeks at the rate of $30 per week from June 24, 1953, subject to a credit for previous payments, and for reasonable medical expenses not to exceed $1,000.
The petition alleges that the plaintiff was injured when he struck his left knee with a hammer in the process of dismantling some boards. In addition to praying for compensation benefits for total permanent disability, he also alleged that the defendant’s failure to pay was arbitrary and capricious and that he was therefore entitled to a penalty in the amount of 12% of all payments due plus attorney fees.
The suit was brought as a direct action against the Travelers Insurance Company, compensation insurer of T. Miller and Sons, Inc., plaintiff’s employer. The defendant’s answer admitted the employment, the hazardous nature of employer’s business and plaintiff’s duties, and the fact of insurance coverage, but denied the accident, the injuries and the disability.
Following trial on the merits in th@ court below, the trial judge rendered written rea *211 sons for judgment which we herewith set out in full:
“This is a suit under the Workmen’s Compensation Act, LSA-R.S. 23:1021 et seq.
“On or about May 6, 1953, plaintiff was employed by T. Miller & Sons, Inc., in the town of Mamou, Evangeline Parish, La., as a carpenter-helper on a construction project. Plaintiff, in the course and scope of his employment was injured when he struck his left knee with a hammer. This accident was duly reported, and in due course, plaintiff was sent to a physician who referred plaintiff to an Orthopedic Surgeon who performed an Orthrotomy on plaintiff’s left knee.
“The main question at issue is the plaintiff’s disability. An incidental question concerns plaintiff’s wages for the purpose of computing the rate of compensation due him.
“The trial took place on the merits, plaintiff offering both expert and lay testimony on the question of disability. Defendant confined its evidence to the presentation of expert medical testimony.
“On the question of lay testimony, the plaintiff testified that he is unable to work because of the pain in his knee and leg. He stated that his wife and son had to make the 1954 crop with the assistance of hired help; that he had never hired help before except for cotton picking, since his farming operations were modest; that he tried to do light work and specifically harvest or dig sweet potatoes, but could not stand the work and was forced to quit before finishing the first day; that this knee hurts more at some times than at others, but that it hurts always; that he also has pain along his leg, below and above his knee, and up to his hip; that his leg swells frequently with or without exercise or exertion.
“Mrs. Elias Hollier, plaintiff’s wife, testified that she and her son, with the assistance of hired help, made the crop; that plaintiff had tried to work but could not; that plaintiff performed menial house chores while she worked in the fields; that plaintiff had never hired before except for picking cotton; that plaintiff’s knee swells frequently —every week; that plaintiff complains to her frequently, almost daily, about pain in his knee and above and below his knee; that the 1955 crop will be grown by her and her son; and that further, on cross-examination, plaintiff has never complained to her about pain in his back, and that complaints do not vary with the temperature.
“Another lay witness,' Mr. Isaac Deshotels, testified that plaintiff hired him to plant plaintiff’s 1954 cotton crop;' that he had never worked for plaintiff before; that he lives about one mile from plaintiff’s residence and has known plaintiff many years, but yet, he has never visited plaintiff and plaintiff has never visited him; that he does not do work for hire for anyone else and hired out to planitiff because plaintiff told him he had a sore knee and could not walk behind a plow.
“Another lay witness, Mr. George Soileau, testified that he had hired plaintiff to help dig potatoes in 1954; that plaintiff started work at 1:00 P.M. and was put to operating a plow, uprooting the potatoes, but that plaintiff, because of pain in his knee, could not follow the plow; plaintiff was thereafter put to picking potatoes and placing them in crates, but, in spite of this lighter work, plaintiff had to quit in the middle of the afternoon at about 3 :30 P.M.; that plaintiff had been hired for the entire afternoon.
“The plaintiff’s son, Gene Hollier, testified that he and his mother had grown plaintiff’s crop in 1954; that he had been working and living away from home about three or four weeks at the time of the trial; that he had last seen his father’s knee swollen about three or four weeks ago; that his father com *212 plained- about his knee and leg daily’; that he frequently Saw his father’s knee swollen; that his father’s pain did not seem to vary with the humidity or 'temperature;- that his father’s complaints were sometime in the morning, during the day or at night; that his father did not complain about his back, did not use a walking stick and did not limp; that he does not recall ever hearing his father complain about his leg or knee pri- or to this injury, while employed by’T. Miller & Sons, Inc.
“From the above lay, testimony, the. Court finds no difficulty at arriving at the conclusion that the plaintiff cannot work without suffering great pain, and that prior to the accident from which this suit arises, that plaintiff did and was able to do all the work required of him.
“In'view of the above finding of facts on the question on lay testimony,' the Court will now examine the expert medical.
“Dr. George B. Briel, M. D., Orthopedic Surgeon, testified that on his first examination of July 14, 1954, he found a ‘fair amount of tenderness over the scar and over the medial joint space’ ; ‘Considerable amount of pain along the medial joint space’; ‘mile amount of locking at 160 degrees’ and ‘a positive Appely Test’.
“On November 12, 1954, Dr. Briel again examined plaintiff and found ‘slight rebound tenderness’, excerpt ‘170 degrees extension’ ; ‘tenderness over the medial joint space and along the medial side of the patella’; ‘a considerable amount of grating and crepitation under the patella’ ; ‘a clunking sound in the knee’ ; ‘pain at the extreme of extension’ ; ‘10 degrees lateral instability of the knee’ ; ‘weakness of the quadriceps group and hamstring muscles of the left leg compared to the right leg and atrophy of the left calf, knee and thigh’.
“Dr. Briel re-examined plaintiff on March 9, 1955, and found the following objective signs: 1. ‘Swelling along the joint spaces’ ; 2. ‘Positive McMurray Test’ ; 3. ‘Positive Appely Test’ ; 4. ‘Less tone and strength in the quadriceps muscles than on previous examination.’
“The Court finds that from the above findings, Dr. Briel concluded that plaintiff presently has a loose piece of cartilage posterior in the knee joint.
“As against the above medical testimony of Dr. Briel, defendant relies strongly on the findings of the following:
“Dr. Charles V. Hatchette, Orthopedic Surgeon, examined plaintiff on May 21, 1953, and diagnosed his injury as ‘a tear of the medial meniscus’. On August 5, 1953, Dr. Hatchette surgically removed the torn medial meniscus. On December 4, 1953, four months thereafter, Dr. Hatchette discharged plaintiff as able to resume his regular duties. On January 21, 1954, plaintiff was again re-examined by Dr. Hatch-ette, who found a lack of- normal tone of the quadriceps muscles. On April 5, 1954, Dr. Hatchette found considerable improvement and advised plaintiff to return to his regular duties. Plaintiff was paid compensation during this entire time. On June 16, 1954, plaintiff was again examined and found able to return to work. Defendant ceased to pay compensation on June 9, 1954. On December 30, 1954, when plaintiff returned to Dr. Hatchette, he was found by the Doctor to have no disability. After that Dr. Hatchette did not see him.
“Another medical expert, Dr. Moss M. Bannermann, Orthopedic Surgeon, examined plaintiff once in January of 1955, and his findings were negative except for a small amount of atrophy of the left leg. Dr. Bannermann did find some slight disability which he estimated at five (5%) per cent. He has not seen the plaintiff since nor before.
“It is the contention of the defendant that it is a well established rule that *213 in compensation suits, as well as in any other type' of civil- action, plaintiff, in order to recover, must prove his case by a preponderance of the evidence and with reasonable certainty. It is the further contention of the defendant that the testimony of Dr. Hatchette and Dr. Bannermann outweigh the testimony of .the plaintiff and the lay witnesses plus the testimony of Dr. Briel.
“The position of the plaintiff is that the positive testimony by either expert or layman is more convincing than negative testimony, and he cites as his authority, ‘Hair v. Williams Bros., [La. App.] 144 So. 800’.
“Plaintiff further contends that the positive testimony of all lay witnesses, plus that of Dr. George B. Briel, is far more convincing than the negative testimony of Dr. Hatchette and Dr. Ban-nermann, particularly when their failure to find the positive objective signs found by Dr. Briel is explainable and explained by their own testimony. The Court is inclined to agree with plaintiff.
“This court finds that our jurisprudence has conclusively established the fact that an employee is totally disabled when he can perform work of the same character in which he is engaged at the time of the accident only with substantial pain. This principle of law was reviewed in the case of ‘Zito v. Standard Accident Insurance Co., [La.App.] 76 So.2d 25.’ As heretofore stated, this Court found no difficulty in concluding that the plaintiff is unable to work because he suffers disabling pain upon the least exertion.
“On the incidental issue of the amount of compensation to which plaintiff is entitled, the Court finds that that matter was settled in the case of ‘Martin v. Great American Indemnity Co., [La.App.] 75 So.2d 415’.
“The claimant in this case worked six (6) days per week at eight (8) hours per day, weather permitting, is therefore entitled to sixty-five (65%) per cent of six (6) times his normal daily- wage of Eight ($8.00) Dollars, or the statutory maximum of Thirty and No/100 ($30.00) Dollars per week. . - -•
' “It is therefore the opinion of this Court that the plaintiff has established by-preponderance of evidence, that he suffered an accident while in the-course - and scope of his employment in a hazardous occupation, and that the disability ,is total and has continued from the date of his injury to this date,, and that his wages for the purposes of computing his compensation rate are Forty-eight and No/100 ($48.00) Dollars per week, and that his disability is a direct result of the above accident.
“Let proper decree be therefore prepared and presented to this Court for execution in open Court, and in accordance with the views hereinabove, and for all costs, less any compensation payment already made.”
The above quoted reasons for judgment represent an accurate statement of the facts as testified to by the various witnesses. It is the defendant’s contention in this appeal, of course, that the plaintiff has failed to prove his case by a preponderance of the evidence. The plaintiff’s position, on the other hand,- is that while the testimony of Doctors Hatchette and Bannermann may be against him, that it is overcome by the positive evidence, both lay and medical, introduced by him. The case, as we see it, is in many respects similar to that of Morrison v. Travelers Insurance Co., La.App., 79 So.2d 177, decided by us not quite a year ago. In that case the doctors who testified on behalf of the defendant were positive that there were no objective symptoms of pain and that the operation performed had been a complete success, while the plaintiff’s physician found the latter suffering from a relaxed inguinal ring and suffering a great deal of pain. In that case, the trial judge found in favor of the plaintiff and being unable to find any manifest error in his conclusions, we affirmed the judgment.
The same situation is true in this matter. While we are greatly impressed with the testimony of Doctors Hatchette and Ban-nermann, we are still unable to find where *214 the record as a whole would reflect any manifest error in the conclusions arrived at by the trial judge.
While, as stated before, the plaintiff asked for penalties and attorney fees, which were not granted by the trial court, we need not pass upon this question as the plaintiff neither appealed nor answered the appeal taken by the defendant.
Finding no manifest error in the judgment appealed from, the same is hereby affirmed. v
Judgment affirmed.