LOTTINGER, Judge.
This suit was instituted under the workmen’s compensation act, LSA-R.S. 23:1021 et seq., by Emerson Holmes against the New Amsterdam Casualty Company; which carried the workmen’s compensation insurance for Ronald A. Coco, Inc. Petitioner claims total and permanent disability as a result of the alleged accident and seeks judgment of $30 per week for a period of 400 weeks, plus medical and attorney fees. The Lower Court rendered judgment in favor of petitioner and against the defendant at the rate of $26.55 per week for a period not to exceed more than 400 weeks, subject to a credit of $26.55 already paid, and for medical bills in the amount of $451.20. The defendant has appealed.
Petitioner claims that on July 7, 1954, while working as a laborer for Ronald A. Coco, Inc., he fell a distance of approximately 35' from a scaffold to the ground, causing serious and permanent injuries to his back. At the time of the accident there is no question but that petitioner’s employment was hazardous. Ronald A. Coco, Inc., was engaged in the operation of a planer mill, manufacturing lumber and lumber products. As a result of the acci *91 dent, petitioner claims to have received a low torsion back injury in the lumbo sacral region and a sacroiliac sprain, as well as injuries to the nerves and traumatic neuritis and claims total and permanent disability to do work of a reasonable character.
The defendant filed answer admitting that the employment of petitioner was hazardous within the meaning of the compensation laws, but denied that petitioner was involved in an accident and further denies that petitioner received any injury while working within his employment..
The Lower Court awarded judgment for petitioner as stated above and the defendant has taken a suspensive appeal.
The evidence shows that the pipe which was carrying the shavings to the incinerator became stopped up because of dampness of the shavings. Petitioner and his co:worker, Herman Jackson, were assigned to climb on the scaffold and unstop the pipe. It was while they were on the scaffold or going up the scaffold that the alleged accident occurred. Assuming that the petitioner fell from the scaffold, the height of the fall would have been IS' and not 35' as testified by petitioner, as they were only required to climb a height of 15' to unstop the pipe.
There were no eyewitnesses to the alleged accident. Jackson testified that he saw petitioner walking toward the office holding his back. On petitioner’s return, he told Jackson that he had fallen. Immediately after the alleged accident, petitioner reported to the plant superintendent that he had injured his back by slipping on the scaffold. The superintendent, Mr. Weimer, sent petitioner to the dector. Other co-employees also testified that the petitioner told them of the alleged accident.
This is not a strong case for petitioner in the proof that an accident actually happened, however, the Courts have held that an accident under the compensation act might be corroborated by surrounding circumstances. In Zito v. Standard Accident Insurance Co., La.App., 76 So.2d 25, 29, we held as follows:
“In passing upon the question of whether plaintiff has proven his accident, it is well to remember that even in cases where the employee is unable to produce other eyewitnesses of the alleged accident in which he sustained injuries, he is not barred from recovery of compensation if his explanation of the accident and injuries, was corroborated by surrounding circumstances. Sumrall v. E. I. Du Pont De Nemours & Co., La.App., 1 So.2d 430; McCray v. Yarbrough, La.App., 20 So.2d 447; Verbois v. Standard Accident Co., La.App., 25 So.2d 97; Dolhonde v. Gullett Gin Co., La.App., 25 So.2d 104; Cascio v. Standard Oil Co. of New Jersey, La.App., 32 So.2d 66; O’Connor v. American Automobile Insurance Co., La.App., 32 So.2d 624; Johnson v. Brown Paper Mill Co., Inc., La.App., 35 So.2d 774; Franks v. Department of Highways for Louisiana, La.App., 43 So.2d 491.”
There are many other cases in our jurisprudence with the same holding. We, therefore, feel that under the relaxed rules of evidence in compensation cases, that the petioner has satisfactorily proved that an accident did occur.
The nature and extent of the injury sustained by petitioner are just as confusing as they possibly can be. While we fully realize that medicine is not an exact science, some of the medical testimony was so conflicting as to render a reasonable conclusion therefrom almost impossible.
The first doctor to see petitioner after the accident was Dr. Stovall. On his first examination on the day of the accident, he was unable to find any back injury, but did- administer medication. He again saw petitioner on July 8, 9, 13, 16, 17, 19, 20 and 22, and on July 13 diagnosed the injury as a minor sacroiliac sprain. Petitioner *92 was discharged by Dr. Stovall as able to return to his work, on July 22, and Dr. Stovall testified that petitioner was then completely recovered but was still complaining of pains in his back.
Following the discharge, petitioner went back to work and worked at his same job from July 26 to September 18, 1954, when the company discharged him. The reason for his discharge was that the work load was decreasing and the company just had to let some of the employees go.
Dr. Stovall again saw petitioner on March 10, 1955 and testified that a complete examination showed no cause for his complaining. He testified that the emotional behavior of petitioner in 1955 was the same as it was in 1953.
Dr. Campanella, a well known orthopedist, examined petitioner on November'21, 1954 and March 11, 1955. He testified on cross examination that he found “a minimal hypertrophic pointing .in the postero-inferior margin of the fifth lumbar body” which was not a result of the accident'of July 7, 1954. Dr. Campanella found no injury to the nerve. He testified that the subjective complaints of pain indicate disability of a maximum of 5 to 10% to the body, - and that such disability should not prevent petitioner from doing manual labor. He testified that he should-be able to go back to. work but that the work would cause him some' pain. In regard to this pain, Dr. Campanella stated.:
“By Mr. Brúmfield:
“Q. =Now, Dr. Campanella, a person-with a back that Emerson Holmes has in accordance with your diagnosis, even though you say - he in your 'opinion could'do hard manual labor, could-he do that hard manual labor without suffering pain ? A. I don’t believe that he could do it without some pain, without difficulty, particularly at first. There may be that with activity and constant use that some of that difficulty would disappear, but in a majority of instances they will have trouble with the back off and on.
“Q. It is a permanent thing? A. Yes, sir.
“Q. In your opinion Emerson Holmes would have this difficulty on a permanent basis? A. Yes, sir, we will have to assume permanent because this has been existing not quite a year.”
It was Dr. Campanella’s opinion that the accident of July 7 did not cause the injury but aggravated a pre-existing injury.
There is a great deal of testimony in this record, both pro and con, that the plaintiff is suffering from a post traumatic neurosis and from prostatitis. Due to the basis of the decision of the Lower Court as well as ours we deem it unnecessary to relate all this testimony. The transcript of testimony consisted of 298 pages, which was very voluminous.
As to the injury to petitioner, the Lower Court stated as follows:
“The extent of plaintiff’s disability presents a more difficult question to decide. This plaintiff is an uneducated Negro of low mentality. In some respects he is downright dull. , But I do not believe for a moment that he is afflicted with traumatic neurosis. His complaints to all the doctors are relatively minor. I do not pose as an authority but. I am impressed, with the belief that the limited extent of his complaints and disability should not result in so serious a condition as Dr. Wyatt depicts in his testimony. I observed the plaintiff-in and out of court during the three days of trial and I found absolutely nothing abnormal in his actions. He moved about and testified without hesitation and there is evidence that when he- was with his friends out of the court room he joined *93 in the talk and 'laughter the same as did the others. I simply do not believe all the talk by some witnesses that the plaintiff had drawn himself in-, to his shell like a frightened tortoise in a thunderstorm.
“Dr. Moody was a Very positive witness for the plaintiff, but he is not a neuro or orthopedic specialist. I do not doubt the sincerity of his deductions, but his testimony can only be given that limited weight in a specialty field to which it is entitled when given by a general practitioner. The testimony on which-1 mainly depend in this case is that of Dr. Campanella, who is an orthopedic specialist of wide experience. Pie found muscle spasm and other symptoms to support his opinion that the plaintiff suffered a lumbar sacral strain; that it has resulted in some permanent disability and that if plaintiff attempted to perform manual labor he would suffer pain for at least a time. This doctor thinks that if plaintiff would try to work he‘might -improve. I think plaintiff should try it, but at the time of trial of the case he had not done it. In the light of Dr. Campanella’s opinion of his‘ condition this court holds that at the time of said trial the plaintiff was totally and permanently disabled from doing work of any reasonable character.
“The plaintiff had the accident on July 7. and went back to work on July 26, 1954. He had been discharged by • Dr. Stovall as, completely recovered. No payment was due for the first week. Compensation in the sum of $26.55 was paid for the second week, after which plaintiff went to work. Failure to pay more after he was discharged in September was certainly not arbitrary or capricious and no penalty will be allowed.”
Although the evidence both as to the occurrence to the accident and the nature and extent to any injury to petitioner is very confusing, we feel that under the relaxed rules of compensation cases the petitioner has proved an accident and some injury. We are unable to say that the Lower Court committed any manifest error in rendering judgment for petitioner and we feel that the Lower Court’s decision should be affirmed.
For the reasons hereinabove assigned, the - judgment of the Lower Court is affirmed, all costs of this appeal to - be paid by the defendant.
Judgment affirmed.