LOTTINGER, Judge.
This is an appeal by the plaintiff in a workmen’s compensation case from a judgment of the Lower Court which rejected his demands. The trial judge rendered a well reasoned written opinion which we adopt as our own. It is as follows:
“This is a workmen’s compensation suit instituted by Nelson Lapoint against The Insurance Company of the State of Pennsylvania, in which plaintiff alleges that during the course of his employment by the City of Sulphur he sustained an injury to his right knee which has rendered him totally and permanently disabled from performing the duties of his regular employment. At the time the accident is alleged to have occurred defendant, The Insurance Company of the State of Pennsylvania, was the compensation insurer of the City of Sulphur. After issue was joined the case was tried, and it is now before the court for decision on its merits.
*508 “Plaintiff has received from defendant all compensation payments due from the date of the accident to and including October 17, 1958, covering a period of 24 weeks, plus all medical expenses incurred for the treatment of this injury. The only issues presented are, first, whether an accident occurred as alleged, and, second, if an accidental injury was sustained by plaintiff as alleged whether he recovered from that injury by October 17,1958.
“The evidence establishes that on May 2, 1958, during the course of plaintiff’s employment as a laborer by the City of Sulphur, a load of pipe rolled against plaintiff’s left leg, causing him to fall and to twist and injure his right knee. He did not report the accident and he continued to work at the same job, performing the same duties he had been performing, for a period of approximately three weeks thereafter, at which time he was discharged because the work which he was employed to do had been completed. After he was discharged he consulted a physician and then reported the accident to his employer.
“Plaintiff first consulted Dr. Neil Blanchard, who is engaged in the general practice of medicine, about May 22, 1958. Dr. Blanchard treated plaintiff’s knee for a short period of time and then referred him to Dr. George B. Briel, an orthopaedic surgeon.
“Dr. Briel examined plaintiff on May 26, 1958, and diagnosed his injury as a ‘bucket-handle type of tear of the medial meniscus’ of the right knee. In his opinion this injury was disabling and could have been caused by the accident which occurred on May 2, 1958. Dr. Briel removed the medial meniscus by surgery on May 29, and he continued to treat plaintiff until October 16, 1958, at which time he discharged plaintiff as having fully recovered from the injury and as being able to return to his former occupation. At the time plaintiff was discharged he still complained of pain in the knee, but Dr. Briel testified that he could find no swelling or atrophy of the knee or any other objective signs which would explain or justify these complaints. Dr. Briel further testified, however, that as a result of the surgery it is possible that plaintiff may have a mild synovitis of the knee, which will gradually disappear as plaintiff uses the knee. Because of this possible synovitis he concluded that plaintiff had a partial disability of the leg of from five to ten per cent. In Dr. Briel’s opinion, however, at the time he examined plaintiff last on October 16, 1958, plaintiff was able to perform all of the duties which he was performing prior to the date of the accident.
“Dr. Norman Paul Morin, an ortho-paedic surgeon, examined plaintiff on October 22, 1958, and from this examination concluded that plaintiff had a partial permanent disability of the right knee, which he estimated at fifteen per cent. This residual disability, he testified, was due to a thickening of the lining of the knee which could cause the knee to become inflamed if plaintiff should be required to do excessive climbing or squatting. In Dr. Morin’s opinion plaintiff was not disabled from performing the duties of his previous employment, which he understood did not require climbing and only short period of squatting, and that plaintiff could return to that same type of employment. He testified, however, that plaintiff would not be able to do work such as that of a ‘roofer’, because of the climbing and flection of the knee which would be required.
“Dr. Charles V. Hatchette, an orthopedic surgeon, examined plaintiff on December 1, 1958, and testified that in his opinion plaintiff at that time had a ‘synovitis of the right knee which may be considered chronic’. He de *509 scribed this condition as an irritation of the joint capsule of the knee which is known as the synovial membrane or lining, and he stated that synovitis sometimes follows surgery where the synovial lining is cut leaving a residual irritation and thickening of such lining. He testified that in his opinion plaintiff had a residual disability of his knee, which he estimated from ten to twenty per cent, but that he should be able to return to some type of work, and that eventually all of the disability should disappear. He testified that he found no swelling, no atrophy, no arthritic changes, and no other objective signs which would account for plaintiff’s complaints of pain. His diagnosis, he stated, was based entirely on subjective symptoms or upon the representations made to him by plaintiff, one of which was that plaintiff’s knee had been swelling. He further testified as follows:
“ ‘Q. If it is not true that Mr. La-point’s knee has been swelling on him, what would that do' to the diagnosis that you have made here ? A. I would assume that his statements were not true.
“ ‘Q. Would that make you believe that he does not have a condition of synovitis which you have diagnosed purely on the basis of his complaints to you? A. Yes.
“ 'Q. Dr. Hatchette, were you able to find any objective symptoms of injury, disease or disability in the case of Mr. Lapoint? A. No.’
“Plaintiff testified that he has had no swelling in his knee since October, 1958, that there was no swelling at the time he was last examined by Dr. Briel or on the occasion when he was examined by Dr. Morin and by Dr. Hatch-ette. It is apparent from plaintiff’s own testimony, therefore, that the history which he gave to Dr. Hatchette, and on which that doctor bases his diagnosis, was not accurate.
“The evidence further establishes that the duties which plaintiff was required to perform were not of a strenuous nature, and that plaintiff was not required to do any heavy lifting or climbing or to work for long periods of time in a squatting position. Plaintiff described the pain which he says he now experiences as being continuous, regardless of whether the knee is being used or not, that it is less severe in the mornings but increases throughout the day, and that the anterior portion of the knee, particularly the area below the knee cap, is so sensitive that he cannot bear to kneel on it or to have anyone touch it. All of the doctors testified that the old scar left by the operation was non-painful to palpation and was not attached to any of the tissues under the skin. They could give no explanation for the extreme sensitivity of which plaintiff complained. Also, the fact that no atrophy was present indicates to them and to me that plaintiff does not experience the pain which he described.
“The evidence convinces me that an accident did occur substantially as alleged by plaintiff, and that as a result of that accident plaintiff sustained an injury to his right knee consisting of a tear of the medial meniscus. This injury was repaired by surgery, with good results, but he was disabled from performing the duties of his employment from the date of the accident until he was discharged by Dr. Briel on October 16, 1958. At the time plaintiff was discharged by Dr. Briel, however, he had fully recovered from his injury, and although he had a mild residual disability relating to his knee or to his leg, I am convinced that he was able to perform all of the duties which he customarily performed or was required to perform in his employment. The conclusion that plaintiff has a residual *510 disability of his knee or leg, as I interpret the testimony of the doctors, is based on the fact that as a result of the surgical procedure plaintiff now has a thickening of the lining of the knee joint which may cause an irritation in that joint if plaintiff engages in strenuous labor, involving climbing or prolonged squatting. The duties which he customarily performs, however, do not include that type of activity.
“The facts in this case are similar to those presented in Carrington v. Consolidated Underwriters, La.App., 80 So.2d 427, decided by the Court of Appeal, Second Circuit, and later amended and affirmed by the Supreme Court (230 La. 939, 89 So.2d 399). In that case, as in this one, the plaintiff sustained an injury to the medial meniscus, which was repaired by surgery. The testimony of the medical and lay witnesses indicated that he had a residual disability to the knee, estimated at from five to ten percent, but that in spite of this condition he was capable of returning to his former work or work of the same or similar kind and character. Compensation was awarded for a specific period, ending at the time the court determined that he was able to return to his work.
“The cases of Hollier v. Travelers Insurance Company, La.App., 87 So.2d 210, and Ashford v. Travelers Insurance Company, bearing No. 38,233 of the Civil Docket of this Court, are not applicable here because in each of those cases it was found that the injuries actually disabled the employee from performing the duties of his employment. In the Ashford case the injuries were almost identical to those sustained by plaintiff in this suit. In that case, however, plaintiff was employed as an insulator and his work required him to do a great amount of climbing, including working on ladders and scaffolding, and to work in squatting and kneeling positions for long periods of time.
“For the reasons assigned, therefore, I conclude that plaintiff has failed to establish by a preponderance of the evidence that he has been disabled since October 16, 1958, from performing the duties of his regular employment or work of a similar nature. Judgment, accordingly, is rendered in favor of defendant, The Insurance Company of the State of Pennsylvania, and against plaintiff, Nelson Lapoint, rejecting the demands of said plaintiff at his costs.”
For the reasons assigned, the judgment appealed from is affirmed.
Judgment affirmed.